**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EHI JOSEPH UNUAKHAULU,
                    *Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,
                    *Respondent.*

No. 02-73837

Agency No.
A74-777-018

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 3, 2004**
Pasadena, California

Filed December 20, 2004
Amended February 14, 2005
Second Amendment July 18, 2005

Before: A. Wallace Tashima, Raymond C. Fisher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Fisher

---

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**This panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

## COUNSEL

Mark A. Karlin, Karlin & Karlin, Los Angeles, California, for the petitioner.

Francis W. Fraser, Senior Litigation Counsel, United States Department of Justice, Washington, D.C., for the respondent.

Marc Van Der Hout, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, for amicus curiae National Immigration Project of the National Lawyer's Guild.

## ORDER

The panel judges have voted to grant the petition for rehearing of amicus curiae National Immigration Project of the National Lawyer's Guild, filed May 2, 2005. Judges Fisher and Tallman voted to deny the petition for rehearing en banc, and Judge Tashima recommended denying the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The amended opinion filed February 14, 2005, and reported at 398 F.3d 1085, is withdrawn, and is replaced by the Second Amended Opinion filed concurrently with this order.

## OPINION

FISHER, Circuit Judge:

Ehi Joseph Unuakhaulu, a native and citizen of Nigeria, petitions for review of the Board of Immigration Appeal's ("BIA") summary affirmance of the Immigration Judge's ("IJ") decision denying him withholding of removal and relief under the Convention Against Torture ("CAT"). The central question is whether we lack jurisdiction to review his petition where the IJ found that Unuakhaulu was removable based on his aggravated felony conviction, but neither ordered him removed on that basis nor relied on the aggravated felony conviction in denying Unuakhaulu's application for withholding of removal and for relief under CAT. We conclude that 8 U.S.C. § 1252(a)(2)(C) divests us only of jurisdiction to review orders of removal that are actually based on a petitioner's prior aggravated felony conviction.[1] We therefore have jurisdiction to review the BIA's nondiscretionary denial of withholding, which was not predicated on Unuakhaulu's aggravated felony. Reaching the substance of Unuakhaulu's petition, however, we deny it as without merit.

## I.

Unuakhaulu was admitted to the United States as a visitor on January 17, 1986. In February 1997, he was convicted of conspiracy to traffic in counterfeit credit cards in violation of 18 U.S.C. § 371 and sentenced to 18 months in prison. Thereafter, the former Immigration and Naturalization Service initi-

---

[1]Hereinafter, all statutory citations are to 8 U.S.C. unless otherwise indicated.

ated proceedings against Unuakhaulu, charging him with (1) being subject to removal as an alien convicted of an aggravated felony, *see* § 1227(a)(2)(A)(iii),[2] and (2) as an alien who remained as a visitor beyond the time authorized, *see* § 1227(a)(1)(B). As shown in the transcript of the merits hearing, the IJ sustained the charges against him, finding that Unuakhaulu's prior conviction for credit card fraud was an aggravated felony and that he had remained as a visitor in the United States beyond the time authorized. Unuakhaulu then applied for withholding of removal and for relief under CAT.

Subsequently, the government contended that even though Unuakhaulu received only 18 months' imprisonment for his prior conviction, his credit card fraud was a "particularly serious crime" that should make him ineligible for withholding of removal under § 1231(b)(3)(B). The IJ disagreed, finding that the crime was not particularly serious and that Unuakhaulu was eligible for withholding of removal.

As to the merits of his withholding of removal claim, Unuakhaulu sought withholding based on his membership in the Ogoni tribe in Nigeria. According to his testimony, the Nigerian government engaged in tribal genocide of the Ogoni people, seizing their land in the delta region for its oil and arresting and executing Ogonis solely because of their opposition to the government. He claimed that the Nigerian government seized his father's land in 1987.

Unuakhaulu provided no evidence to corroborate his claim

---

[2]An "aggravated felony" includes "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; . . . [or] an offense relating to commercial bribery, counterfeiting, [or] forgery . . . for which the term of imprisonment is at least one year; . . . [or] an attempt or conspiracy to commit an offense described in this paragraph." §§ 1101(a)(43)(M), (R) and (U).

Unuakhaulu does not dispute that his prior conviction for conspiracy to traffic in counterfeit credit cards was an aggravated felony.

that he was a member of the Ogoni tribe. He acknowledged that he was not a member of any Ogoni organization in the United States. He said that he had friends who were members of the Ogoni tribe in the Los Angeles area (where the hearing took place) who perhaps could have corroborated his tribal membership, but he did not ask any of them to testify on his behalf.

Unuakhaulu's mother lives in Lagos, Nigeria, but has not suffered any persecution on account of her Ogoni membership. His seven siblings left Nigeria because of the treatment of the Ogoni. His uncle, a leader of the Movement to Save the Ogoni People, was imprisoned in 1994 because he fought for Ogoni rights and protested the government's seizure of Ogoni land and its arrest and torture of the Ogoni people. His uncle is still in prison, although Unuakhaulu did not know where. He claimed that his uncle is mentioned in an Amnesty International report that was in evidence, but he provided no documentation to corroborate that the person mentioned in the report was indeed his uncle.

Unuakhaulu admitted that he was not politically active when he lived in Nigeria. When asked if there was any way the Nigerian government could identify him in order to subject him to persecution or torture, Unuakhaulu conceded that "[b]ecause I am not politically involved with any organization, there is no way of identifying me."

The IJ denied Unuakhaulu's application for withholding of removal and for relief under CAT, and ordered Unuakhaulu removed. The order of removal[3] provided: "It is hereby

---

[3]"The term 'order of deportation' means the order of the [immigration judge], or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation." § 1101(a)(47). This definition has been held to apply to orders of removal as well. *See Molina-Camacho v. Ashcroft*, 393 F.3d 937, 940 (9th Cir. 2004).

ordered that the respondent's application for withholding of removal to Nigeria and relief under the Torture Convention be denied. It is further ordered that the respondent be removed from the United States to Nigeria." [AR 56.] The IJ did not state the basis upon which Unuakhaulu was being ordered removed and did not refer to either of the two charges in the Notice to Appear — (1) being subject to removal as an alien convicted of an aggravated felony, *see* § 1227(a)(2)(A)(iii), or (2) as an alien who remained as a visitor beyond the time authorized, *see* § 1227(a)(1)(B). Unuakhaulu appealed the IJ's decision denying him withholding of removal and relief under CAT to the BIA, which dismissed his appeal without an opinion. Unuakhaulu now timely petitions this court for review of the BIA's order.

## II.

The initial question is whether § 1252(a)(2)(C) divests this court of jurisdiction to review the BIA's order of removal and denial of withholding. The government argues that it does. We have jurisdiction "to determine whether jurisdiction exists." *Matsuk v. INS,* 247 F.3d 999, 1000-01 (9th Cir. 2001) (quoting *Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000)).

**[1]** Section 1252(a)(2)(C) is a jurisdiction-stripping provision that precludes our "review [of] any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2) (A)(iii) . . . ." Section 1227(a)(2)(A)(iii) in turn specifies that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable [i.e., removable]."**⁴** None-

---

**⁴**Because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 merged deportation and exclusion proceedings into the broader category of removal proceedings, an alien who was previously "deportable" is now "removable." *See Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 854 n.6 (9th Cir. 2004).

theless, an alien such as Unuakhaulu deemed removable because of his aggravated felony may in limited circumstances still be eligible for withholding of removal if the aggravated felony is not a "particularly serious crime." *See* § 1231(b)(3)(B)(ii).

For purposes of determining whether the § 1231(b)(3)(B)(ii) exception applies, the statute construes "particularly serious crime" differently depending upon the type of relief being sought. In the context of *asylum*, a person convicted of an aggravated felony "shall be considered to have been convicted of a particularly serious crime," and is thus automatically barred from asylum relief in removal proceedings. *See* §§ 1158(b)(2)(A)(ii), (B)(i); *United States v. Corona-Sanchez*, 291 F.3d 1201, 1210 n.8 (9th Cir. 2002) (en banc) (noting that aggravated felons are "barred from eligibility for asylum" under §§ 1158(b)(2)(A)(ii), (B)(i)).[5] In the context of *withholding of removal*, however, the bar to relief is more narrowly construed: an aggravated felony conviction is considered to be a particularly serious crime (1) automatically, if the applicant was sentenced "to an aggregate term of imprisonment of at least five years"; or (2) if the Attorney General, in his discretion, determines that an aggravated felony conviction resulting in a sentence of fewer than five years was in fact a particularly serious crime. *See* § 1231(b)(3)(B). We lack jurisdiction to review the latter denial of withholding based upon this exercise of the Attorney General's discretion. *Matsuk,* 247 F.3d at 1002. In *Matsuk*, however, we left open the "still narrower question" of whether the court has jurisdiction to review "*non-discretionary* denials of withholding" — that is, a decision not based on the alien's aggravated felon status but on the merits of his withholding claim. *Id.* (emphasis added).

---

[5]Unuakhaulu does not dispute the IJ's finding that his prior aggravated felony conviction bars him from eligibility for asylum.

Thus, there are two relevant provisions which, if applicable, divest us of jurisdiction to review an order denying withholding of removal. First, "when the alien has been sentenced to an aggregate term of imprisonment of at least 5 years," § 1231(b)(3)(B), he is automatically barred from withholding of removal and we have no jurisdiction because the alien is being removed "*by reason of* having committed a criminal offense." § 1252(a)(2)(C) (emphasis added). Second, when the Attorney General decides that the alien's offense was a "particularly serious crime," § 1231(b)(3)(B), we lack jurisdiction to review such a decision because it is discretionary. § 1252(a)(2)(B)(ii); *Matsuk*, 247 F.3d at 1002. Neither jurisdictional bar applies in this case because Unuakhaulu received only 18 months' imprisonment for his prior conviction for credit card fraud and the IJ specifically found that his conviction was not a particularly serious crime. Indeed, she did not rely at all on his conviction as the basis for denying his application for withholding of removal.

The IJ found that Unuakhaulu's prior conviction for conspiracy to traffic in counterfeit credit cards was an aggravated felony that made him ineligible for asylum and voluntary departure. (Unuakhaulu does not dispute *this* finding.) The IJ also found, however, that Unuakhaulu's aggravated felony conviction was not a particularly serious crime because he served only an 18-month sentence, there was no restitution order for him to pay and he had not employed force in his crime. (The government does not dispute *this* finding.) The IJ therefore found that Unuakhaulu's prior conviction did not preclude him from requesting withholding of removal. She then went on to deny his request for withholding of removal and for relief under CAT because Unuakhaulu failed to establish those claims on the merits.

The government nonetheless contends that because Unuakhaulu was convicted of an aggravated felony, we lack jurisdiction over his petition for review because the jurisdictional bar of § 1252(a)(2)(C) extends to *all* orders of removal

of an individual who has committed an aggravated felony. However, we have held that the jurisdiction-stripping provision in § 1252(a)(2)(C) applies only when — and to the extent that — the agency has found the petitioner to be removable based on one of the enumerated criminal grounds. *See Alvarez-Santos v. INS*, 332 F.3d 1245, 1253 (9th Cir. 2003) (holding in part that the "by reason of" language of § 1252(a)(2)(C) "precludes judicial review only when [1] an alien is actually determined to be removable *and* [2] *ordered removed* on the basis of the covered criminal act") (emphasis added); *see also Cazarez-Gutierrez v. Ashcroft*, 382 F. 3d 905, 919-20 (9th Cir. 2004) (holding that the court lacked jurisdiction to review a petition where the "basis of the [petitioner's] removal was his drug offense and the BIA did not overturn the IJ's correct conclusion that [the petitioner] is removable because of his offense.") Thus, in *Alvarez-Santos*, we rejected the government's position that "§ 1252(a)(2)(C) precludes judicial review of an otherwise reviewable removal order where the record establishes that the individual could have been *but was not ordered removed* for having committed a covered criminal offense." *Alvarez-Santos*, 332 F.3d at 1250, 1253 (emphasis in the original).

The government also argues that *Matsuk* "should be" interpreted as supporting the application of § 1252(a)(2)(C) to bar review of the denial of withholding of removal whether or not the decision to deny withholding was based upon the Attorney General's discretion under § 1231(b)(3)(B). In *Matsuk,* however, we specifically declined to reach the question of whether we had jurisdiction to review "*non-discretionary* denials of withholding" — that is, denials of withholding on the merits. *See Matsuk,* 247 F.3d at 1002.

**[2]** Taken together, *Alvarez-Santos* and *Matsuk* lead us to conclude that there is no jurisdictional bar over *all* petitions for review filed by petitioners with an aggravated felony conviction in their past. *Matsuk* bars jurisdiction over a discretionary denial of withholding pursuant to a finding of a

"particularly serious crime" under § 1231(b)(3)(B). 247 F.3d at 1002. *Alvarez-Santos* holds that the "by reason of" language of § 1252(a)(2)(C) "strips us only of jurisdiction to review orders of removal predicated on commission or admission of a crime, not orders of removal not so predicated." 332 F.3d at 1247. Here, although the IJ determined that Unuakhaulu *was removable* on the basis of the covered criminal act, she did not *order him removed* on that basis. Indeed, the IJ neither specified the basis upon which Unuakhaulu was removed nor stated that Unuakhaulu was ordered removed based on the charges in the Notice to Appear. Although the IJ could have ordered Unuakhaulu removed based on his aggravated felony conviction, she did not explicitly do so. Moreover, the substance of the IJ's decision demonstrates that she did not predicate her denial of relief on Unuakhaulu's aggravated felony conviction. Instead, the IJ denied his application for withholding of removal and for relief under CAT based on Unuakhaulu's failure to demonstrate that he would suffer persecution if he returned to Nigeria. We accordingly reject the government's invitation to extend the jurisdiction-stripping provisions to circumstances where they do not apply. *See Alvarez-Santos*, 332 F.3d at 1250 ("[T]here is a strong presumption in favor of judicial review of administrative action. . . . Accordingly, we . . . construe narrowly restrictions on [our] jurisdiction to review INS orders removing aliens who have been in this country, legally or otherwise.") (internal quotation marks and citations omitted).

**[3]** Because the BIA did not (1) order Unuakhaulu removed based on his aggravated felony conviction, *and* (2) did not predicate its denial of withholding of removal and relief under CAT on Unuakhaulu's aggravated felony conviction or on a discretionary decision, we have jurisdiction to review Unuakhaulu's petition.

## III.

Turning to the merits of Unuakhaulu's petition, we conclude that there is substantial evidence in the record to support

the IJ's decision to deny Unuakhaulu's application for withholding of removal and for relief under CAT.

Because the BIA summarily affirmed the IJ's decision, we review it as if it were the BIA's decision. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1063 n.1 (9th Cir. 2003). We review legal questions the IJ addressed de novo. *See Hernandez-Montiel v. INS*, 225 F.3d 1084, 1090 (9th Cir. 2000). "The [IJ]'s interpretation of immigration laws is entitled to deference" when her interpretation is not "clearly contrary to the plain and sensible meaning of the statute." *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003). We review the IJ's factual findings under the deferential substantial evidence standard. *See Hernandez-Montiel*, 225 F.3d at 1090. We uphold the IJ's determination "unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result[.]" *Singh-Kaur v. INS*, 183 F.3d 1147, 1149-50 (9th Cir. 1999) (emphasis in original).

**[4]** An alien is eligible for withholding of removal "if [ ]he demonstrates a clear probability of persecution" in the country to which he would be removed, "which means it is more likely than not that [ ]he will be persecuted if deported." *Halaim v. INS*, 358 F.3d 1128, 1132 (9th Cir. 2004) (internal quotation marks omitted); *see* 8 C.F.R. § 208.16(b)(2). The alien bears the burden of proving that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). If the alien can demonstrate that he suffered past persecution, then the court presumes a reasonable fear of future persecution. 8 C.F.R. § 208.16(b)(1)(i).

**[5]** Unuakhaulu does not claim that he was ever subjected to past persecution. When asked if there was any way the government could identify him as Ogoni in order to subject him to persecution or torture, Unuakhaulu conceded that he would not be recognized unless he was on tribal lands in the delta

region of Nigeria or politically active. Thus, if he returned to Lagos, the city in which his mother resides, he would not be singled out as Ogoni. His concession that the Nigerian government could not identify him as Ogoni, coupled with his admission that he was not persecuted in the past, demonstrate that Unuakhaulu has not met his burden of proving that it is more likely than not that he would be subject to persecution on account of his tribal affiliation.

Unuakhaulu argues that the IJ found his testimony credible. He also argues that the IJ erred because she based her denial of his application on his failure to provide corroborative evidence. He claims that corroborative evidence is not always necessary and that he provided corroboration through the United States Department of State Country Report and the Amnesty International report.

Once an applicant's testimony is deemed credible, no further corroboration is necessarily required to establish the facts to which the applicant testified. *See Kaur v. Ashcroft*, 379 F.3d 876, 890 (9th Cir. 2004); 8 C.F.R. § 1208.16(b) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). However, "where the IJ has reason to question the applicant's credibility, and the applicant fails to produce non-duplicative, material, easily available corroborating evidence and provides no credible explanation for such failure, an adverse credibility finding will withstand appellate review." *Sidhu v. INS*, 220 F.3d 1085, 1092 (9th Cir. 2000); *see Chebchoub v. INS*, 257 F.3d 1038, 1044-45 (9th Cir. 2001). Country conditions evidence generally provides the context for evaluating an applicant's credibility, rather than corroborating specifics of a claim. *See Duarte de Guinac v. INS*, 179 F.3d 1156, 1162 (9th Cir. 1999).

Contrary to Unuakhaulu's contention, the IJ expressly found that his testimony lacked credibility. She found that parts of his testimony were "meager and nonspecific" and that

"[t]he absence of corroborative evidence where one would reasonably expect there to be, along with an adequate explanation of why such evidence was not obtained nor presented leaves the Court to draw an adverse inference regarding the credibility of the respondent's claim." She also found that corroborating proof was "more than necessary here because the respondent's conviction is for a crime involving fraud which already undermines his credibility."

The IJ's finding is supported by the record. Corroborative evidence in this case would have been readily available. Unuakhaulu testified that he had continuous contact with Nigeria, yet he provided no corroboration regarding significant factors of his claims such as his membership in the Ogoni tribe or verification that his uncle was indeed the man mentioned in the Amnesty International report. The IJ noted that Unuakhaulu could have obtained affidavits from his family members in Nigeria or had his friends in the Los Angeles area testify on his behalf, but he did not.

The IJ found that Unuakhaulu's testimony "basically paralleled" information contained in the Country Report — that Ogonis who live in their homeland, the delta region of Nigeria, who are political activists are identifiable as Ogonis and thus may be subjected to persecution by the Nigerian government. This, however, did not establish that Unuakhaulu is a member of the Ogoni tribe or that it is more likely than not that he would be subjected to persecution if he were deported to another region of Nigeria outside of the delta region.

**[6]** The IJ's findings were supported by substantial evidence, and Unuakhaulu failed to meet his burden of proving that he suffered past persecution or that there is a clear probability of future persecution. We therefore deny his petition for review.

## IV.

In order to establish eligibility for protection under CAT, Unuakhaulu must demonstrate "that it is more likely than not

that he [ ] would be tortured if removed. . . .” 8 C.F.R.
§ 208.16(c)(2). Torture is defined under CAT as an act
involving severe pain or suffering that “is inflicted by or at
the instigation of or with the consent or acquiescence of a
public official or other person acting in an official capacity.”
8 C.F.R. § 208.18(a)(1). As detailed above, Unuakhaulu did
not present evidence that it is more likely than not that he
would be tortured by, at the instigation of or with the consent
of the Nigerian government were he to be removed to Nigeria.
Because Unuakhaulu is ineligible for relief under CAT, we
deny his petition.

## V.

For the foregoing reasons, we hold that we have jurisdic-
tion to review the BIA’s decision denying Unuakhaulu’s
application for withholding of removal and for relief under
CAT. The BIA’s decision is supported by substantial evi-
dence in the record and is **AFFIRMED**.