**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SERGEY YEGHIAZARYAN,<br><br>*Petitioner,*<br><br>v.<br><br>ALBERTO R. GONZALES, Attorney General,<br><br>*Respondent.* | No. 03-72159<br><br>Agency No.<br>A74-423-765<br><br>ORDER AMENDING OPINION AND DENYING PETITION FOR PANEL REHEARING AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 20, 2005—Pasadena, California

Filed December 14, 2005
Amended March 10, 2006

Before: Andrew J. Kleinfeld and Raymond C. Fisher,
Circuit Judges, and Milton I. Shadur, Senior District Judge.*

Opinion by Judge Shadur

---

*The Honorable Milton I. Shadur, Senior Judge for the United States District Court for the Northern District of Illinois, sitting by designation.

**COUNSEL**

Aggie R. Hoffman, Shivani T. Mehta, Law Offices of Aggie R. Hoffman, Los Angeles, California, for the petitioner-appellant.

Peter D. Keisler, Assistant Attorney General; Terri J. Scadron, Assistant Director; Jennifer A. Parker, Attorney; Jennifer Levings, Attorney; Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington D.C., for the respondent-appellee.

**ORDER**

The opinion filed December 14, 2005, is amended in its entirety as follows:

**OPINION**

Sergey Yeghiazaryan ("Yeghiazaryan") challenges the decision of the Board of Immigration Appeals ("BIA") denying his motion for reconsideration of the BIA's earlier denial of his motion to reopen. Yeghiazaryan had sought reopening of the BIA's decision dismissing his appeal from the denial by an Immigration Judge ("IJ") of his asylum application and of the withholding of removal. Because the BIA's denial of Yeghiazaryan's motion to reconsider was an abuse of discretion and a violation of due process, we grant Yeghiazaryan's

petition for review and remand for the substantive consideration of his motion to reopen.

*Background*[1]

Yeghiazaryan, a citizen of Armenia, was born in Siberia to parents exiled by the government of the former Soviet Union. On November 11, 1995 Yeghiazaryan entered the United States with a Soviet passport and a B-2 visa. One and one-half months later, on December 29, 1995, Yeghiazaryan filed an application for asylum (I-589) with the Immigration and Naturalization Service ("INS"). Yeghiazaryan could not speak or understand English, so he enlisted the help of a lay person to complete his I-589 application. Because that nonlawyer never translated the I-589 application for him, Yeghiazaryan was unaware of the facts that he needed to include in the I-589 and hence failed to communicate those facts to the nonlawyer for inclusion.

At Yeghiazaryan's asylum interview, the asylum officer found his testimony to be "consistent, detailed, and plausible in light of country conditions . . . [and] therefore . . . credible." According to the officer, although Yeghiazaryan presented evidence indicating that his "fundamental human rights to security of person, liberty, and freedom from arbitrary arrest were violated," the evidence did not show that these abuses were perpetrated "on account of any statutory grounds." On May 20, 1996 the matter was referred to the IJ and a Notice To Appear for Hearing was issued.

Yeghiazaryan retained an attorney to represent him at the

---

[1]What is reflected in this *Background* section is the state of the record as presented to the immigration authorities and on our appeal—a record that, because it forms the basis for our review, we must assume to be true. We have not of course made any factual findings regarding such matters as the nature of the conduct, or the adequacy of representation, on the part of Yeghiazaryan's earlier counsel as hereafter recited in the text.

IJ hearing. That lawyer not only failed to prepare Yeghia-zaryan for the hearing but was also unprepared herself on multiple occasions before the IJ. In one instance she instructed Yeghiazaryan to lie and tell the IJ that he was sick so that she could secure a continuance on Yeghiazaryan's case, and Yeghiazaryan followed his lawyer's advice—he lied. Despite numerous continuances, the lawyer was still unprepared once the hearing took place—thus she neglected to translate into English critical documents proving imputed political opinion. Instead Yeghiazaryan had to try to introduce those documents himself as best he could.

At the hearing the IJ found that Yeghiazaryan was not enti-tled to asylum, basing the denial largely on what the IJ believed to be the "most significant testimony": Yeghiazary-an's statement, as translated, that if he returned to Armenia he would "not [be] in danger, but my family would be humiliat-ed." As the IJ explained, prospective humiliation is not suffi-cient to meet the statutory criteria for asylum: "a well-founded fear of persecution or a clear probability of persecu-tion." Unfortunately that analysis was based on what has now been labeled as a serious mistranslation by the interpreter of Yeghiazaryan's actual statement. Noune Oganessian ("Oganessian"), an official court interpreter later hired by Yeghiazaryan's third lawyer to help in preparation of his motion to reopen, has explained that Yeghiazaryan really said that he would "*[n]ot only [be] in danger*, but my family would be humiliated" (emphasis added).

After the hearing the original counsel notified Yeghia-zaryan that she would not represent him on appeal. Yeghia-zaryan then sought to retain another lawyer. Although Yeghiazaryan believed that he was signing a contract to enlist that lawyer's services, the contract (which was never trans-lated into Armenian or Russian) in fact provided for the ser-vices of the lawyer's wife. Yeghiazaryan was also unaware that the wife, despite her retainer as his attorney, filed a pur-ported pro se brief in Yeghiazaryan's name. That eight-page

brief included only boilerplate recitations of the law and contained just two paragraphs that referred to the particular facts and merits of Yeghiazaryan's case.

On November 27, 2002 the BIA affirmed without opinion the IJ's denial of asylum, a ruling that could be the subject of a motion to reopen filed within 90 days. Confronted by another loss due to ineffective assistance by counsel, Yeghiazaryan then hired a third lawyer, Aggie Hoffman ("Hoffman"). On December 23, 2002 Hoffman filed a skeletal motion to reopen on Yeghiazaryan's behalf.[2] That motion identified four grounds for reopening: (1) ineffective assistance of counsel, (2) an ineffective interpreter, (3) new and material evidence that had previously been unavailable and (4) other evidence not brought to the attention of the IJ because of the ineffective assistance of counsel. And having done so, the motion notified the BIA that Yeghiazaryan would "submit a brief, declarations, and fully documented basis of the grounds of this [motion to reopen], within the 90 day time period."

In addition to handling the motion to reopen, Hoffman concurrently prepared an application for stay of removal (Form I-246).[3] Yeghiazaryan was scheduled to be deported on December 27, 2002, when the BIA's dismissal of his appeal became final, and the December 23 filing of the skeletal motion to reopen was an important adjunct of the application for a stay of deportation. In support of the application for stay of removal, Hoffman provided the INS with a copy of complaints that had been filed with the California State Bar

---

[2]On January 8, 2003 the BIA acknowledged receipt of Yeghiazaryan's motion to reopen.

[3]Yeghiazaryan requested that this Court grant him permission to supplement the record with a copy of the I-246 he submitted in December 2002 and a copy of a second I-246 he submitted in May 2003. As those documents were not presented to the BIA, we will not review them on appeal (see 8 U.S.C. § 1252(b)(4)(A)).

against all of the other lawyers and a receipt of the filing fee paid for the motion to reopen. According to Yeghiazaryan, in considering an I-246 application agents from Immigration and Customs Enforcement typically "only look for a filing fee from the BIA as evidence that further review is pending," so that a stay is warranted. On February 5, 2003 Yeghiazaryan's application for stay of removal was granted.

Just one week later, on February 12, 2003, the BIA summarily dismissed Yeghiazaryan's motion to reopen for its failure to provide supporting evidence. At the time of that dismissal there were still 14 days left in the 90-day window for Yeghiazaryan to file such evidence.

On March 14, 2003 attorney Hoffman filed a motion on Yeghiazaryan's behalf for reconsideration of the BIA's denial of the motion to reopen. Because the BIA had denied the motion to reopen before Hoffman could provide the brief and evidence to support it, she included those materials in the motion to reconsider. Similarly, Hoffman, who had intended to file her own declaration with the evidence in support of the motion to reopen, included her declaration with the motion to reconsider. Hoffman's declaration explained that the original motion to reopen was skeletal because she had to file something to stay Yeghiazaryan's deportation, and the limited nature of that filing was due to the facts that she had only recently been retained, that she was unable to obtain Yeghiazaryan's documents from the earlier counsel because of the holiday season and that she had difficulty finding a qualified and certified Armenian translator.

On May 23, 2003 the BIA denied Yeghiazaryan's motion to reconsider. Explaining the denial, the BIA stated:

> At the time the respondent's motion to reopen was filed with the Board, it was not supported by evidence that established that reopening was warranted. The Board was therefore correct to deny it. There is

no language in the regulation that requires the Board to hold in abeyance motions to reopen until the expiration of the 90-day period allowed for filing.

Yeghiazaryan (still represented by Hoffman) argues before us that the denial by the BIA of his motion to reconsider was an abuse of discretion and violation of due process. Additionally he claims that he was denied due process when his petitions for appeal and for a motion to reopen were reviewed by a single BIA member. We have jurisdiction pursuant to 8 U.S.C. §1252(a).

## *Standard of Review*

We review the BIA's denial of a motion to reopen for abuse of discretion (*see Lara-Torres v. Ashcroft*, 383 F.3d 968, 972 (9th Cir. 2004), *amended by* 404 F.3d 1105 (9th Cir. 2005)). Such an abuse of discretion exists when the BIA acts "arbitrarily, irrationally or contrary to law" (*id.,* reconfirming uniform earlier caselaw). Questions of law are reviewed de novo, with deference generally afforded to the BIA's interpretation of the immigration laws "unless that interpretation is contrary to the plain and sensible meaning of the statute" (*Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004)). Claims of due process violations are also reviewed de novo (*id.*).

## *Denial by the BIA of the Motion To Reconsider*

In filing a motion to reconsider, the petitioner must "specify[ ] the errors of fact or law in the prior Board decision . . ." (8 C.F.R. § 1003.2(b)(1)).[4] In this instance Yeghiazaryan contends that the BIA erred in denying his motion to reopen when it pretermitted the time Yeghiazaryan had available to file his motion to reopen. We agree.

---

[4]All provisions of 8 C.F.R. will be cited "Reg. §—."

**[1]** Under Reg. §1003.2(c)(2) a petitioner has 90 days "after the date on which the final administrative decision was rendered in the proceeding sought to be reopened" to file a motion to reopen. Reg. §1003.2(c)(1) further explains that "[a] motion to reopen proceedings . . . must be accompanied by the appropriate application for relief and all supporting documentation." In denying Yeghiazaryan's motion to reopen, the BIA took the position—and the government now argues—that the regulation requires simultaneous submission of a petitioner's motion, brief and supporting evidence, even in instances where the petitioner has filed a protective motion and has notified the court that he intends to provide the necessary application for relief and supporting documentation at a later date within the 90-day time period. Nothing in Reg. §1003.2(c), however, mandates concurrent submission under such circumstances, nor is there any warning that early filing somehow closes the otherwise available 90-day window.

**[2]** Rather, as *Garcia-Cortez v. Ashcroft*, 366 F.3d 749 (9th Cir. 2004) instructs, when the legal claims are clearly stated the BIA violates a petitioner's due process rights by dismissing a motion to reopen for failure to file supporting material within the prescribed time limit. Although *Garcia-Cortez* concerned a neighboring regulation regarding summary dismissal, its reasoning is applicable here. In *Garcia-Cortez* two petitioners filed a notice of appeal from the IJ's decision. In that notice the petitioners indicated both the bases of their appeal and that they would separately file a written brief in support of their appeal at a later date (*id*. at 751). Although the promised brief was ultimately filed, that took place after the time for so doing had elapsed (*id*.). As a result the BIA summarily dismissed the petitioners' appeal. We overturned the BIA, finding the BIA's summary dismissal due to the belatedly filed briefing to be inappropriate where the petitioners had provided the BIA with sufficient notice of their claims in their initial filing.

**[3]** In this case Yeghiazaryan's filing likewise provided the BIA with notice of the specific grounds on which he sought

to challenge the IJ's decision: It stated that he was entitled to reopen his asylum hearing because he was prejudiced by his ineffective and incompetent counsel and interpreter and because he had new evidence to support his asylum application. Additionally, and perhaps most importantly, Yeghiazaryan—like the petitioners in *Garcia-Cortez*—did then file a brief and documents to support his claim.

Indeed, the only reason that Yeghiazaryan's brief was assertedly "untimely" was because the BIA had dismissed his case summarily before the Regulation's 90-day period elapsed.[5] At no point before so ruling did the BIA indicate to Yeghiazaryan that such an early dismissal was possible. Yeghiazaryan filed what amounted to a fully briefed and supported motion to reopen at the next available time—in his motion to reconsider. That newly-filed motion not only set out support for Yeghiazaryan's claims of ineffective assistance of counsel and ineffective interpreter and provided the BIA with new evidence to support his asylum application but also, as noted above, set forth his explanation for why he earlier filed the skeletal motion to reopen.

To support his claim for ineffective assistance of counsel, pursuant to *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), Yeghiazaryan included disciplinary complaints he had filed against the earlier lawyers. Additionally, Yeghiazaryan included a report by Oganessian demonstrating the incompetency of the interpreter used at Yeghiazaryan's asylum hearing. While that report documented numerous errors of the original interpreter, the most crucial error came where the court interpreter distorted Yeghiazaryan's answer when the IJ

---

[5]In its brief the government tries to argue that even if the BIA had held open Yeghiazaryan's motion to reopen, Yeghiazaryan "failed to file the supporting evidence within the ninety-day time period allowed by the regulation." That argument lacks merit. As we have explained, once the BIA prematurely dismissed his motion to reopen, the only option for Yeghiazaryan was to file, in conjunction with his motion to reconsider, the evidence with which he intended to support his motion to reopen.

asked him: "Do you believe that upon your return you would be, ah, pursue or in danger for your past activities?" While the court interpreter translated Yeghiazaryan's answer as "[n]ot in danger, but my family would be humiliated, my entire family," Yeghiazaryan actually responded "[n]ot *only* in danger, but my family would be humiliated, my entire family." That error was highly prejudicial, for as stated earlier it was based on that mistakenly altered statement—that Yeghiazaryan would suffer only humiliation—that his application for asylum was denied.

**[4]** In denying the motion to reconsider, the BIA neither took into consideration nor evaluated that new evidence. It simply reaffirmed its earlier determination that the dismissal of the motion to reopen was proper on procedural grounds. Under circumstances such as these—where Yeghiazaryan had to file his skeletal motion to reopen for collateral purposes, where counsel filing the motion to reopen entered the case at a very late stage and during the holiday season, where Yeghiazaryan's motion to reopen laid out its bases and notified the BIA that evidence would be forthcoming within the prescribed regulatory time for filing, and where the BIA did not notify Yeghiazaryan that his motion could be denied before the expiration of that time for filing—the BIA's denial was not only "arbitrary" and "irrational" but also "contrary to law" and a violation of due process. Due process "requires that aliens who seek to appeal be given a fair opportunity to present their cases" (a well-established proposition reconfirmed in *Garcia-Cortez*, 366 F.3d at 753). In that respect, *see also Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000) (citation omitted), which holds that although there is no administrative rule requiring the BIA to review all relevant evidence submitted on appeal, "it is beyond argument . . . that the Due Process Clause requirement of 'a full and fair hearing' mandates that the [BIA] do so in its capacity as a reviewing tribunal."

**[5]** In this instance Yeghiazaryan was denied due process because the BIA foreclosed his one avenue of relief without

providing him notice and without a reasoned basis for doing so. That action was highly prejudicial, because it prevented Yeghiazaryan from correcting the incompetent translation at his hearing before the IJ, and because "a competent translation is fundamental to a full and fair hearing" (*Perez-Lastor v. INS*, 208 F.3d 773, 778 (9th Cir. 2000)). Here the distorted translation resulted in the IJ's fatal misunderstanding of a dispositive moment in Yeghiazaryan's testimony. When the BIA then refused to consider the evidence Yeghiazaryan later submitted with his motion to reconsider, it compounded the harm. And because Yeghiazaryan was thus denied the opportunity to have his motion to reopen heard on the merits, we remand this case to the BIA for substantive consideration of that motion.

## Single BIA Member Review

Yeghiazaryan's alternative contention that the BIA review of appeals by single-person panels is a *per se* violation of due process lacks merit. On that score *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 848 (9th Cir. 2003) has held that streamlining is constitutionally permissible. Moreover, we will not take judicial notice, as requested by Yeghiazaryan, of the Findings and Recommendations of the ABA Commission on Immigration Policy, Practice and Pro Bono.

## Conclusion

For the reasons stated in this opinion, we **GRANT** Yeghiazaryan's petition for review and **REMAND** this case to the BIA for consideration on the merits of Yeghiazaryan's motion to reopen (*see INS v. Ventura*, 537 U.S. 12 (2002) (per curiam)).

Respondent's amended petition for panel rehearing, filed February 16, 2006, is **DENIED** and no further petitions for rehearing will be considered.