**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAHMATULLAH AFRIDI,
                              *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                              *Respondent.*

No. 04-76600

Agency No.
A27-338-200

OPINION

On Petition for Review of a Decision of the
Board of Immigration Appeals

Argued and Submitted
February 15, 2006—San Francisco, California

Filed April 4, 2006

Before: Procter Hug, Jr., Arthur L. Alarcón, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Alarcón

**COUNSEL**

Kevin H. Knutson, Sacramento, California, for the petitioner.

Paul Fiorino and Margaret K. Taylor, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

**OPINION**

ALARCÓN, Circuit Judge:

Petitioner Rahmatullah Afridi petitions for review of the Board of Immigration Appeals' ("BIA") decision dismissing his appeal and ordering him removed to Afghanistan. Mr. Afridi contends that the BIA erred in finding him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an aggravated felony and in denying him withholding of removal pursuant to 8 U.S.C. § 1231(b)(3) and protection under Article 3 of the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, opened for signature Feb. 4, 1985, S. Treaty Doc. No. 100-20, at 20 (1988), 23 I.L.M. 1017, 1028 (1984) ("Convention Against Torture"). Mr. Afridi also contends that the BIA violated his right to due process by failing to apply proper legal standards. We conclude that Mr. Afridi was removable for having committed an aggravated felony. We also hold that the BIA applied the proper legal standard in determining that Mr. Afridi does not qualify for relief under the Convention Against Torture. We grant the petition for review in part, however, because we conclude that the BIA failed to apply the proper legal standard in determining Mr. Afridi's eligibility for withholding of removal.

**I**

Mr. Afridi, a citizen of Afghanistan, was admitted to the United States as a refugee in 1985 and became a lawful permanent resident in 1986.

In 1993, Mr. Afridi pled no contest to his indictment under what is now California Penal Code § 261.5(c) (West 2005) for unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator and was sentenced to three years probation. Mr. Afridi, who was born in 1961, testified in immigration court that this conviction resulted from

his having had sexual intercourse with a seventeen-year-old girl he picked up on the side of the road who said she would have sex with him for sixty dollars.

On April 15, 2003, a notice to appear was issued charging Mr. Afridi as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he was convicted of an aggravated felony—the sexual assault of a minor—after admission into the United States.

Mr. Afridi admitted all the allegations contained in the Notice to Appear, except the allegation that he had been convicted of unlawful sexual intercourse with a minor. The Immigration Judge ("IJ") found that Mr. Afridi was removable, and denied all forms of relief. He appealed this decision to the BIA.

On November 22, 2004, the BIA affirmed the IJ's order. The BIA found that (1) the IJ properly found that Mr. Afridi was removable for having committed an aggravated felony; (2) Mr. Afridi's conviction constituted a particularly serious crime, rendering him ineligible for withholding of removal; (3) the IJ was correct in its determination that Mr. Afridi's demonstration of unusual or outstanding equities did not compel an exercise of discretion; and (4) the IJ properly found that Mr. Afridi failed to demonstrate eligibility for protection under the Convention Against Torture. Mr. Afridi now petitions for review of the BIA's decision.

## II

### A

Mr. Afridi first contends that the BIA improperly determined that his conviction for unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator constituted an aggravated felony. The questions of law presented in this petition are reviewed *de novo*, with deference generally afforded to the BIA's interpretation of the

immigration laws "unless that interpretation is contrary to the plain and sensible meaning of the statute." *Yeghiazaryan v. Gonzales*, 431 F.3d 678, 682 (9th Cir. 2005) (quoting *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004)).

**[1]** Under 8 U.S.C. § 1227(a)(2)(A)(iii), an alien who has committed an aggravated felony after admission is removable. The term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43)(A) as "murder, rape, or sexual abuse of a minor." Sexual abuse of a minor is not defined in the Immigration and Nationality Act ("INA").

When Congress placed "sexual abuse of a minor" in the list of aggravated felonies, it did so without cross-referencing any other federal statute. *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999); 8 U.S.C. § 1101(a)(43)(A). Because Congress did not define "sexual abuse of a minor" for the purposes of defining aggravated felony, courts must interpret the term "by employing the ordinary, contemporary, and common meaning of the words that Congress used." *Baron-Medina*, 187 F.3d at 1146 (quoting *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1174 (9th Cir. 1999)); *see also Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 (9th Cir. 2003) (reaffirming that when the term "sexual abuse of a minor" is at issue, *Baron-Medina* controls).

**[2]** In this case, the BIA, consistent with *Baron-Medina,* employed the "ordinary, contemporary and common meaning" of "sexual abuse of a minor." *Baron-Medina*, 187 F.3d at 1146. The BIA used the definition of the term set forth in *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 995 (BIA 1999), which defined "sexual abuse of a minor" as "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." *Id.* (quoting 18 U.S.C. § 3509(a)(8)).

In arriving at that definition, the BIA in *Rodriguez-Rodriguez* followed the rules of statutory construction. *Id.* at 994. The BIA looked at: (1) Congress's intent to "expand the definition of an aggravated felony and to provide a comprehensive statutory scheme to cover crimes against children" in adding "sexual abuse of a minor" to the list of aggravated felonies; (2) the definition of sexual abuse in 18 U.S.C. § 3509(a)(8), which the BIA believed best captured the broad spectrum of behaviors that constitute sexual abuse of a minor and to be consistent with the common meaning of the term; and (3) Black's Law Dictionary's definition of the term: "[i]llegal sex acts performed against a minor by a parent, guardian, relative or acquaintance." *Id.* at 994-96.

**[3]** The BIA's definition was based on a permissible construction of the statute. Consistent with our precedent, it relied on authorities designed to guide it toward the common meaning of the term. Because the BIA's construction was permissible, we defer to it. *See Yeghiazaryan*, 431 F.3d at 682 (stating that deference is afforded BIA's interpretation of statutes).

**[4]** Notably, Black's Law Dictionary defines "minor" without reference to a specific age. Instead, minor is defined simply as "a person who has not yet reached full legal age." *Black's Law Dictionary* (8th ed. 2004). "Legal age" is defined the same as "age of majority," which is age eighteen or when a person attains full legal rights. *Id.* Therefore, the BIA's decision not to limit the definition of "minor" is also consistent with the common meaning of the term.

Mr. Afridi argues that in interpreting the term "sexual abuse of a minor," courts must look to federal substantive law. Specifically, he points to 18 U.S.C. § 2243, which defines sexual abuse of a minor for purposes of federal criminal law. Under this section, sexual abuse of a minor includes sexual acts with a person who has attained the age of twelve years but has not yet attained the age of sixteen years. Mr. Afridi contends that because his victim was seventeen, and

thus, his crime would not have constituted "sexual abuse of a minor" under federal criminal law, it should not be an aggravated felony.

However, the term "aggravated felony" is not limited to those crimes defined by federal law as sexual abuse of a minor for purposes of determining removability. In fact, 8 U.S.C. § 1101(a)(43) provides that the term "aggravated felony" includes offenses "whether in violation of Federal or State law." In *Baron-Medina*, we expressly rejected the suggestion that the federal sexual abuse laws limit the class of law reached by the term "sexual abuse of a minor." *Baron-Medina*, 187 F.3d at 1146. Accordingly, we reject Mr. Afridi's argument.[1]

**B**

**[5]** We next consider whether Mr. Afridi's offense fits the definition of sexual abuse of a minor. A crime under a state statute qualifies as "sexual abuse of a minor" if the full range of conduct defined by the statute falls within the meaning of the term. *Baron-Medina*, 187 F.3d at 1146 (citing *Taylor v. United States*, 495 U.S. 575 (1990)).

**[6]** Section 261.5(c) of the California Penal Code provides as follows:

> Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three

---

[1]In *Valencia v. Gonzales*, No. 03-72028, 2006 WL 522452 (9th Cir. 2006), we held that a violation of Cal. Penal Code § 261.5(c) does not categorically constitute a crime of violence under 8 U.S.C. § 1101(a)(43)(F). Although in *Valencia*, this Court concluded that the petitioner was not removable as an aggravated felon for having committed a crime of violence, it did not address, and was not asked to address, whether a violation of Cal. Penal Code § 261.5(c) categorically constitutes sexual abuse of a minor under 8 U.S.C. § 1101(a)(43)(A) and whether an alien who violates § 261.5 may be removed pursuant to that section.

years younger than the perpetrator is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison.

"Unlawful sexual intercourse" is defined by § 261.5(a) of the California Penal Code as:

an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For purposes of this section, a "minor" is a person under the age of 18 years and an "adult" is a person who is at least 18 years of age.

A conviction under this statute meets the BIA's interpretation of "sexual abuse of a minor" as encompassing any offense that involves "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct . . . ." *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. at 991, 995. Mr. Afridi had sexual intercourse with a seventeen-year-old girl who was more than three years younger than he. Sexual intercourse clearly constitutes "sexually explicit conduct," and the seventeen-year-old victim in this matter was a "minor" as that term is commonly defined. Further, the BIA's definition of "sexual abuse of a minor" is not limited to victims of any certain age. Therefore, his offense falls within that definition. Accordingly, the BIA properly found that Petitioner was removable for having committed an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii).[2]

---

[2]Mr. Afridi also argues that his conviction should not constitute "sexual abuse of a minor" because he was not required to register as a sex offender and the offense was later reduced to a misdemeanor. Mr. Afridi cites no legal support for these contentions. The law is to the contrary. *See United States v. Alvarez-Guitierrez*, 394 F.3d 1241 (9th Cir. 2005) (holding that a misdemeanor may qualify as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(A)); *cf. United States v. Robles-Rodriguez*, 281 F.3d 900, 903 (9th Cir. 2002) (explaining that for purposes of sentencing enhancement, an offense classified by state law as a misdemeanor can still be an "aggravated felony"); *Murillo-Espinoza v. INS*, 261 F.3d 771, 773-74 (9th Cir. 2001) (holding that expungement of a state conviction does not eliminate immigration consequences of that conviction).

## III

**[7]** Mr. Afridi next argues that the BIA erred in denying him withholding of removal. Under 8 U.S.C. § 1231(b)(3)(B)(ii), an alien who "having been convicted by a final judgment of a particularly serious crime is a danger to the community" is not eligible for withholding of removal. The Attorney General has discretion to determine whether an aggravated felony conviction resulting in a sentence of less than five years is a particularly serious crime. *Id.* Mr. Afridi contends that his offense does not constitute a particularly serious crime and that the BIA employed an improper standard in making this determination.

The Government argues that we lack jurisdiction to determine whether the BIA properly concluded that Mr. Afridi's offense is a particularly serious crime. The Government argues that 8 U.S.C. § 1252(a)(2)(B)(ii) divests appellate courts of jurisdiction to review "a decision or action of the Attorney General . . . the authority for which is . . . in the discretion of the Attorney General" and that whether a crime is particularly serious is a discretionary determination. *See* 8 U.S.C. § 1231(b)(3)(B) (granting Attorney General discretion).[3]

---

[3] 8 U.S.C. § 1231(b)(3)(B) provides:

Subparagraph (A) [proving for withholding of removal] does not apply to an alien deportable under section 1227(a)(4)(D) of this title or if the Attorney General decides that . . . (ii) the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States . . . [f]or purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of the sentence imposed, an alien has been convicted of a particularly serious crime.

**[8]** The REAL ID Act of 2005 ("REAL ID Act") provides that "[n]othing in subparagraph (B) . . . which limits or eliminates judicial review, shall be construed as precluding review . . . of questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). The plain language of the REAL ID Act grants jurisdiction to appellate courts to review questions of law presented in petitions for review of final orders of removal, even those pertaining to otherwise discretionary determinations. *See Cabrera-Alverez v. Gonzales*, 423 F.3d 1006, 1009 (9th Cir. 2005) (explaining that, in the context of appellate review of BIA's discretionary decision to deny cancellation of removal, interpretation of immigration statutes is a question of law that appellate courts have jurisdiction to review pursuant to the REAL ID Act).

The Government argues that *Unuakhaulu v. Gonzales*, 416 F.3d 931 (9th Cir. 2005), which was decided after the effective date of the REAL ID Act, is controlling here. In that case, we held that "when the Attorney General decides that the alien's offense was a 'particularly serious crime,' we lack jurisdiction to review such a decision because it is discretionary." *Id.* at 935 (citing 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. 1231(b)(3)(B)). However, this matter is distinguishable from *Unuakhaulu*. There, the petitioner did not argue that the BIA's interpretation of the term "particularly serious crime" was erroneous, but instead sought review of his claim on the merits. *Unuakhaulu*, 416 F.3d at 933. Therefore, the question whether 8 U.S.C. § 1252(a)(2)(B) stripped this court of jurisdiction to review an Attorney General's discretionary decision and the REAL ID Act were not addressed.

**[9]** Here, however, Mr. Afridi argues that the BIA failed to apply the proper legal standard in determining whether his crime was particularly serious because the BIA misinterpreted our legal precedent defining "particularly serious crime." This argument raises a question of law. This court has previously treated the BIA's interpretation of the term "particularly serious crime" as a question of law. *Beltran-Zavala v. INS*, 912

F.2d 1027, 1029 (9th Cir. 1990) (superceded in part by statute). *See also Ramirez-Ramos v. INS,* 814 F.2d 1394, 1396 (9th Cir. 1987) (treating BIA's interpretation of "particularly serious crime" as a question of law); *Mahini v. INS*, 779 F.2d 1419 (9th Cir. 1985) (same). While we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether the BIA applied the correct legal standard in making its determination. The Government's argument that "[t]o declare that the Court has no jurisdiction over discretionary decisions in one breath, and then declare that the Court *retains* jurisdiction over which 'standards' to apply in making those discretionary decisions is self-contradictory," Supplemental Brief for Respondent at 5, effectively reads § 1252(a)(2)(D) of the REAL ID Act out of existence. It also fails to account for the distinction between questions of statutory construction and the application of a statute to the facts and circumstances of a particular case. *See Ramadan v. Gonzales*, 427 F.3d 1218, 1222 (9th Cir. 2005) (explaining that REAL ID Act distinguishes between issues of statutory construction and discretionary or factual questions).

**[10]** Because "particularly serious" is not statutorily defined, the BIA developed in *In re Frentescu*, 18 I. & N. Dec. 244 (BIA 1982) (superceded by statute in part), the standard that must be considered in determining whether a particularly serious crime has been committed. *Id.* at 247. In *Frentescu,* the BIA explained that in most cases, determining whether a crime is particularly serious requires a case-by-case analysis, using "such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Id*. We have approved of this formulation. *Mahini*, 779 F.2d at1421; *Beltran-Zavala*, 912 F.2d at 1031-32.

**[11]** Mr. Afridi argues that the BIA in this matter evaluated "one fact and one fact only": the length of time he was to be on probation. The BIA opinion states:

> We reject [Mr. Afridi's] argument that, because he was only placed on formal probation and was allowed to complete his sentence of 120 days in jail on alternative sentencing, he does not meet the factors set out in *Matter of Frentescu* . . . for a "particularly serious crime." . . . [A] common sense view of a sexual abuse law, in combination with the legal determination that minors are generally incapable of consent, suggests that whenever an older person attempts to sexually touch a child, there is invariably a substantial risk that physical force will be wielded to ensure the child's compliance. It is clear from the record . . . that [Mr. Afridi] admitted to having sexual intercourse with a minor, a serious crime that poses a danger to the community. Furthermore, although the respondent received only probation in this matter, his sentence also includes a requirement to keep his probation officer advised of his movements for a significant period of time.

(citations omitted). The BIA considered two of the *Frentescu* factors, the nature of the conviction and the sentence imposed, when it concluded that the crime was for sexual abuse of a minor and that Mr. Afridi had to keep his probation officer advised of his movements. In determining that Mr. Afridi posed a danger to the community, the BIA did not consider the circumstances and underlying facts of the conviction. Rather, the BIA concluded that as a general matter, crimes of sexual abuse involve force and make an individual a danger to the community. It did not determine, for example, whether force was used or any other facts or circumstances relating to the commission of the crime. In short, aside from the reference to the sentence Mr. Afridi received, there is nothing in the BIA's analysis regarding Mr. Afridi's conviction for sexual abuse of a minor that would separate it from an analysis regarding any other person's conviction for the same offense.

We must determine whether the BIA erred in failing to apply each of the *Frentescu* factors. In determining whether

the BIA's interpretation of the term "particularly serious crime" in this case is permissible, we must give deference to the BIA's interpretation of the term. *Mahini*, 779 F.2d at 1420.

In *Mahini*, we affirmed the BIA's finding that the petitioner's conviction for distribution of heroin with intent to distribute was a particularly serious offense. *Id.* at 1421. In that case, we explained that the BIA considered *several* of the factors set out in *Frentescu*: the nature of the conviction, the type of sentence imposed, and the circumstances and facts underlying the conviction. *Id.* We concluded that the BIA did not err in determining that the crime was particularly serious and that the petitioner was a danger to the community. *Id.*

In *Beltran-Zavala*, in which we again approved of the *Frentescu* interpretation of a particularly serious crime, we stated that when determining whether a particularly serious crime has been committed, "it is the conviction that is in issue, not other acts that might render the alien dangerous to the community."[4] *Beltran-Zavala,* 912 F.2d at 1031. We had

---

[4]*Beltran-Zavala* and *Frentescu* have been superceded by statute to the extent that those cases require a case-specific analysis for the "particularly serious crime" determination for all aggravated felonies. *See Urbina-Maurico v. INS*, 989 F.2d 185, 1087-88 (9th Cir. 1993) (stating that *Beltran-Zavala* and *Frentescu* were superceded by statute). After *Beltran-Zavala* and *Frentescu* were decided, the INA was amended to provide that all aggravated felonies constituted particularly serious crimes. 8 U.S.C. § 1253(h) (1990) (rewritten in 1996). However, in 1996, Congress specifically provided that for purposes of withholding of removal, the Attorney General has discretion to determine whether aggravated felony convictions resulting in sentences of less than five years are particularly serious crimes. 8 U.S.C. § 1231(b)(3)(B) (2005). Thus, aggravated felonies resulting in sentences fewer than five years are not per se particularly serious and still require a case-by-case analysis, as laid out in *Frentescu. See, e.g.*, *Steinhouse v. Ashcroft*, 247 F. Supp. 2d. 201, 203-04, 208-09 (D. Conn. 2003); (requiring *Frentescu* analysis to determine whether convictions for racketeering and selling drug samples, which resulted in sentence of three years imprisonment, constituted particularly serious crimes); *In Re L-S-,* 22 I. & N. Dec. 645, 656 (1999) (employing *Frentescu* analysis to determine that petitioner's conviction for bringing an illegal alien into the United States, for which he spent three and one-half months in jail, did not constitute a particularly serious crime).

held previously that "[t]he participial phrase, 'having been convicted by a final judgment of particularly serious crime,' modifies the word 'alien' and thus limits those aliens who may be determined to constitute a danger to the community to those who have been finally convicted of serious crimes." *Id.* (quoting *Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir. 1987)). Further, we explained that the language of 8 U.S.C. § 1253(h)(2)(B), as interpreted in *Frentescu*, commits the BIA to an analysis of the characteristics and circumstances of the aliens' conviction. *Id.* at 1032. Therefore, in *Beltran-Zavala*, we held that the petitioner was entitled to have the BIA examine the type of sentence and underlying facts of his conviction for sale of marijuana to determine whether he had committed a particularly serious crime. *Id.* We stated, "the BIA did not examine the type of sentence or the underlying facts. It simply leapt directly from the fact of conviction to the determination that it could not withhold deportation." *Id.*

**[12]** This matter is distinguishable from *Mahini* and similar to *Beltran-Zavala*. In *Mahini*, although the BIA only applied "several" of the *Frentescu* factors, it did look to the circumstances of the petitioner's conviction to make a case-by case determination. *Mahini*, 779 F.2d at 1421. In the present case, the BIA referred to the *Frentescu* factors, but in evaluating Mr. Afridi's crime, it failed to engage in a case-specific analysis. Instead, it generalized to conclude that the type of crime committed by Mr. Afridi was particularly serious. Mr. Afridi, like the petitioner in *Beltran-Zavala*, is entitled to have the BIA examine the underlying facts and circumstances of his conviction.

This Court has never specifically addressed how extensive a *Frentescu* analysis is sufficient, but other courts have. For instance, in *Hamana v. INS*, 78 F.3d 233 (6th Cir. 1996), the Sixth Circuit affirmed the BIA's finding that Hamana's conviction for a firearms offense was particularly serious. *Id.* at 240. In that case, the court said:

> The BIA therefore has the prerogative to declare a crime particularly serious without examining each and every *Frentescu* factor. Although the Board might have engaged in a more fact-specific analysis, *Chevron* directs us to defer to the BIA's interpretation . . . . The Board's decision in this case should be accorded such deference.

*Id.* The court said that some crimes are "facially particularly serious" and affirmed the BIA's finding. *Id.*

In *Yousefi v. INS*, 260 F.3d 318 (4th Cir. 2001), however, the Fourth Circuit held that where the BIA failed to consider the "most important" *Frentescu* factor, "whether the type and circumstances of the crime indicate that the alien will be a danger to the community," no true case-by-case determination had been made. *Id.* at 329-30. Because the BIA failed to engage in a case-specific analysis, the court held that the BIA's interpretation of "particularly serious" was arbitrary and capricious. *Id.*; *see also Steinhouse,* 247 F. Supp. 2d. at 208-09 (holding that failure to consider whether circumstances of an alien's crime indicated she would be a danger to the community in determining that she was ineligible for withholding was arbitrary and capricious).

**[13]** In this case, as in *Yousefi*, the BIA failed to engage in a case-by-case analysis. Nor is there any argument, as in *Hamana*, that Mr. Afridi's crime was "facially particularly serious." We conclude that the BIA acted arbitrarily and capriciously in failing in its duty to consider the facts and circumstances of Mr. Afridi's conviction. Accordingly, we must grant the petition in part and remand to the BIA so that it can consider the facts and circumstances of Mr. Afridi's crime in determining whether he committed a particularly serious crime. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (holding that when a matter has been entrusted to the agency to determine, remand is appropriate).

**IV**

**[14]** Mr. Afridi also contends that the BIA employed an improper legal standard in determining that he did not qualify for relief under Convention Against Torture. An applicant qualifies for protection under Convention Against Torture if he can show that if removed to his native country, it is more likely than not that he would be tortured by public officials, or by private individuals with the government's consent or acquiescence. 8 C.F.R. § 208.16(c)(2); 8 C.F.R. § 208.18(a)(1). Acquiescence is not limited to "actual knowledge, or willful acceptance;" the "willful blindness" of government officials is enough. *Zheng v. Ashcroft*, 332 F.3d 1186, 1194-95 (9th Cir. 2003).

**[15]** Mr. Afridi argues that the proper standard was not applied to the facts of his case. Here, the BIA relied on the definition of "acquiesce" set forth in *Zheng*. *Id.* In applying this standard, the BIA concluded:

> Although [Mr. Afridi] alleges he would be tortured if he returned to Afghanistan, we are unable to identify any particular factors in the record . . . to allow us to conclude that it is more likely than not that the [he] would be tortured by the Afghan government or that it would acquiesce to his torture if he returns to his country.

The BIA applied the correct legal standard in determining that Mr. Afridi is not eligible for relief under the Convention Against Torture.

**V**

Finally, Mr. Afridi argues that the denial of relief violated his due process rights. Mr. Afridi cites no legal authority for this argument. He asserts that the BIA denied him relief without "due consideration." However, the BIA did address each

claim raised by Mr. Afridi in his appeal. He also contends that in determining that he was ineligible for discretionary relief, the BIA failed to consider his rehabilitation. The record shows, however, that the BIA did consider his rehabilitation. It concluded that in light of his other convictions, Mr. Afridi's rehabilitation was not enough to justify allowing him to remain in the United States.

## CONCLUSION

We DENY Mr. Afridi's petition for review of the BIA's finding that he is removable for having committed an aggravated felony.

We GRANT Mr. Afridi's petition for review of the BIA's determination that he committed a particularly serious offense. We REMAND with instructions that the agency engage in a case-specific analysis in determining whether Mr. Afridi's offense is a particularly serious crime, rendering him ineligible for withholding of removal.

We DENY Mr. Afridi's petition for review of the BIA's denial of his claim for relief under the Convention Against Torture. We DENY Mr. Afridi's petition for review insofar as it alleges that the BIA violated his due process rights by failing to exercise due consideration.

The petition for review is **GRANTED in Part, DENIED in Part** and **REMANDED With Instructions**.