**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAMION NATHANIAL BROMFIELD,
                    *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

                    *Respondent.*

No. 05-75844

Agency No.
A44-134-417

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 13, 2008—Seattle, Washington

Filed September 15, 2008

Before: Betty B. Fletcher and Richard A. Paez,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge B. Fletcher

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

12843

**COUNSEL**

Matthew H. Adams, Esq., Northwest Immigrants Rights Project, Seattle, Washington, for the petitioner.

Paul F. Stone, Esq. (argued) and R. Alexander Goring, Esq., U.S. Department of Justice, Civil Division, Washington, D.C., and Ronald E. LeFevre, Department of Homeland Security, San Francisco, California, for the respondent.

**OPINION**

B. FLETCHER, Circuit Judge:

Damion Nathanial Bromfield ("Bromfield") petitions this court for review of a Board of Immigration Appeals ("BIA")

order affirming an Immigration Judge's ("IJ") denial of Bromfield's application for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). We hold that the evidence in the record compels the conclusion that there exists in Jamaica a pattern or practice of persecution of gay men and that the IJ applied the wrong legal standard in evaluating Bromfield's CAT claim. Accordingly, we remand Bromfield's case so that the agency can reconsider whether Bromfield will more likely than not be persecuted or tortured if removed to Jamaica.

## I.  Background

Bromfield is a Jamaican national who came to the United States as a legal permanent resident in 1993 at the age of fifteen. Four years later, when he was nineteen, Bromfield "came out" as a gay man. Prior to coming out, Bromfield made two short trips to Jamaica to visit his extended family. He cites violence against homosexuals in Jamaica as one of the reasons why he has not returned to his home country.[1]

Bromfield was placed in removal proceedings after pleading guilty to misdemeanor sexual abuse in the third degree and contributing to the sexual delinquency of a minor. The government charged him as removable for having been convicted of an aggravated felony. Unable to obtain counsel, Bromfield admitted the charges against him and conceded removability. The IJ found that Bromfield was ineligible for asylum as a result of his convictions.[2] But the IJ declined to

---

[1] We accept Bromfield's testimony as true because the BIA did not make an adverse credibility determination. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004).

[2] Bromfield did not challenge this finding before the BIA. As a result, we do not consider whether the crimes actually constitute aggravated felonies or whether he is eligible for asylum.

find that Bromfield was convicted of a particularly serious crime. Accordingly, he permitted Bromfield to apply for withholding of removal and relief under CAT.[3]

In support of his application, Bromfield testified that as a gay man he would be beaten and killed if returned to Jamaica. In support of this belief, Bromfield testified about articles that he had read about violence against gay men in Jamaica and expressed concern that his father might have told his extended family that he was gay. He also submitted documentary evidence in support of his claim, including the 2005 U.S. State Department Country Report for Jamaica ("Country Report"). According to the report, violence against homosexuals is widespread, and is perpetrated by both private individuals and public officials such as police officers and prison personnel. The report also noted that Jamaican law criminalizes homosexual conduct, making it punishable by up to ten-years imprisonment, and that the prime minister had stated that the government would not be pressured into changing its anti-homosexual laws.

The IJ denied Bromfield's claims on the merits. The IJ rejected the CAT claim because he concluded that Bromfield had not "demonstrated any . . . interest or risk to him from the [Jamaican] government." In rejecting Bromfield's claim for withholding of removal, the IJ relied heavily on the fact that Bromfield had visited Jamaica twice without incident prior to coming out as a gay man and continued to have contact with his Jamaican-born father. He also noted that Bromfield was not politically active. Looking to the Country Report, the IJ acknowledged that gay people suffered discrimination, but

---

[3]The relief Bromfield seeks under CAT is a form of withholding of removal. *See* 8 C.F.R. § 208.16(c). Except in the jurisdiction discussion, *infra*, where the same restrictions apply regardless of whether withholding is sought on the basis of persecution or torture, the phrase "withholding of removal," as used in this opinion, refers to withholding based on risk of future persecution, while the phrase "relief under CAT" refers to withholding based on risk of torture.

characterized violence against them as "random acts of violence" that do not constitute persecution. Thus the IJ concluded that Bromfield had not carried his burden and was not entitled to either form of relief.

Bromfield filed a pro se brief before the BIA arguing that the IJ erred in denying relief because Bromfield had shown regular and widespread persecution and torture of homosexuals in Jamaica carried out at least in part by the Jamaican government. The BIA dismissed the appeal and affirmed the IJ's conclusion that Bromfield failed to sustain the high burden of proof applicable to withholding of removal. The BIA also stated that the record supported the conclusion that Bromfield failed to establish that he would more likely than not be tortured if returned to Jamaica, but did not offer any explanation. Bromfield timely petitioned for review.

## II. Jurisdiction

The government argues that we do not have jurisdiction over this petition for review because Bromfield was found removable on the basis of his conviction for an aggravated felony. We have jurisdiction to determine whether we have jurisdiction, *Ramadan v. Gonzales*, 479 F.3d 646, 649 (9th Cir. 2007) (per curiam), and we conclude that we do.

**[1]** This court lacks jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]." 8 U.S.C. § 1252(a)(2)(c); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii). But this provision applies only "to removal orders, and not to applications for asylum, withholding of removal, or CAT relief." *Arteaga v. Mukasey*, 511 F.3d 940, 942 n.1 (9th Cir. 2007) (citing *Morales v. Gonzales*, 478 F.3d 972, 980 (9th Cir. 2007)). Therefore, if the IJ denies withholding of removal or CAT relief on the merits, rather than relying on the aggravated felony conviction, we have jurisdiction to review the merits of these claims. *See id.* (reviewing withholding of

removal and CAT claims on the merits despite the fact that petitioner was found removable as an alien convicted of an aggravated felony); *see also Unuakhaulu v. Gonzales*, 416 F.3d 931, 933 (9th Cir. 2005) (holding that because "8 U.S.C. § 1252(a)(2)(C) divests us only of jurisdiction to review orders of removal that are actually based on a petitioner's prior aggravated felony conviction . . . [w]e . . . have jurisdiction to review the BIA's nondiscretionary denial of withholding, which was not predicated on Unuakhaulu's aggravated felony").[4]

**[2]** Withholding of removal—whether under INA § 241(b)(3) or CAT—is nondiscretionary relief that must be granted to any alien who establishes that he will more likely than not be persecuted or tortured, respectively, in the proposed country of removal. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(d)(1). Even if the applicant has carried his burden of proof, however, withholding of removal will be denied in four narrow circumstances, one of which is potentially relevant here: an alien is not eligible for withholding of removal if he has been convicted of a particularly serious crime. 8 U.S.C. § 1231(b)(3)(B)(ii). If an individual convicted of an aggravated felony is sentenced to five-years imprisonment, he is deemed to have been convicted of a particularly serious

---

[4]The government attempts to distinguish *Unuakhaulu* by pointing out that the IJ ordered Bromfield removable as charged—i.e., on the basis of the aggravated felony charge in his Notice to Appear—whereas the IJ in *Unuakhaulu* did not specify whether Unuakhaulu was ordered removed because of his aggravated felony or because he overstayed his visa. *See* 416 F.3d at 934. The government's argument fails. Our subsequent precedent makes clear than even in cases where the aggravated felony is the only basis for the finding of removability, we have jurisdiction to review the IJ's determination on the merits. *See Arteaga*, 511 F.3d at 942 & n.1. Bromfield was denied relief not because of his conviction but because the IJ and BIA thought that he had failed to prove his withholding of removal and CAT claims on the merits. Thus, we have jurisdiction to review Bromfield's petition in so far as it challenges the denial of relief on the withholding of removal and CAT claims and not the finding of removability on account of the felony conviction. *See Unuakhaulu*, 416 F.3d at 937.

crime and is ineligible for withholding of removal. *Id.* If, on the other hand, the individual is sentenced to less than five-years imprisonment, he remains eligible for withholding of removal unless the Attorney General (acting through the IJ and the BIA) determines that the crime at issue was "particularly serious." *Id.*; *Afridi v. Gonzales*, 442 F.3d 1212, 1220-21 (9th Cir. 2006).

**[3]** Bromfield was convicted of an aggravated felony for which he was sentenced to less than one-year imprisonment. He therefore remained eligible for withholding of removal unless the IJ determined that his conviction was for a particularly serious crime. The IJ declined to reach this conclusion, and denied Bromfield's application for withholding of removal and relief under CAT on the merits. Because the IJ denied the claim on the merits and not on the basis of Bromfield's conviction, we have jurisdiction to determine whether the IJ erred in determining that Bromfield had not established that he would more likely than not be persecuted or tortured in Jamaica.

### III.　Scope and Standard of Review

Where, as here, the BIA's order indicates that it may have engaged in *de novo* review of the IJ's decision but does not provide any legal analysis, we review the IJ's oral decision "as a guide to what lay behind the BIA's conclusion[s]." *Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2000). We review the IJ's application of legal standards *de novo*. *Morales*, 478 F.3d at 983. The IJ's factual findings, on the other hand, are reviewed for substantial evidence. *Id.* Under this standard, we reverse the BIA if the evidence presented would compel a reasonable factfinder to reach a contrary conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992).

### IV.　Withholding of Removal Under INA § 241(b)(3)

**[4]** Bromfield is entitled to withholding of removal under INA § 241(b)(3) if he establishes that he would more likely

than not be persecuted on account of his sexual orientation if he were removed to Jamaica. 8 C.F.R. § 1208.16(b); *Karouni v. Gonzales*, 399 F.3d 1163, 1172 (9th Cir. 2005) (citing *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1094 (9th Cir. 2000)) (holding that homosexuals are members of a particular social group for purposes of asylum and withholding of removal). He can meet his burden either by presenting evidence that he would be singled out for persecution or by establishing that there is a pattern or practice of persecution of a group of similarly-situated individuals and that his "inclusion in and identification with such group of persons [makes] it . . . more likely than not that his . . . life or freedom would be threatened" in Jamaica. 8 C.F.R. § 1208.16(b)(2).

**[5]** In rejecting Bromfield's claim, the IJ relied on the following facts: (1) although Bromfield's father did not approve of his sexual orientation, he did not reject Bromfield; (2) Bromfield was not politically active; and (3) Bromfield voluntarily went to Jamaica twice before coming out. The IJ also concluded that the Country Report was insufficient to sustain Bromfield's claim because it establishes only that homosexuals are the victims of harassment and random acts of violence, neither of which rise to the level of persecution. As we explain below, the IJ improperly relied on the first three facts and his interpretation of the Country Report is not supported by substantial evidence. We therefore reverse and remand for reconsideration of Bromfield's withholding claim.

The most glaring error in the IJ's opinion is his interpretation of the Country Report. Although the Country Report noted that "a culture of severe discrimination" against homosexuals exists in Jamaica, it did not end there. It went on to recognize that "[t]here were numerous cases of violence against persons based on sexual orientation, including by police and vigilante groups." These included mob attacks, stabbings, and targeted shootings. The problem is so pervasive that Jamaican government entities described the brutality against homosexuals as "widespread."

**[6]** Whether particular conduct constitutes persecution or "random" violence turns on the perpetrator's motive. *See, e.g.*, *Ndom v. Ashcroft*, 384 F.3d 743, 752 (9th Cir. 2004). If the perpetrator is motivated by his victim's protected status—including sexual orientation—he is engaging in persecution, not random violence. *See id.* at 753. Applying this rule to the undisputed facts contained in the Country Report, it is clear that the IJ erred when he ignored the perpetrators' motive in attacking homosexuals. The Country Report does not describe random violence. Rather, it makes clear that homosexuals are the victims of *targeted* violence on account of their sexual orientation. Therefore, the IJ's conclusion that the Country Report does not establish that homosexuals are persecuted in Jamaica is not supported by substantial evidence.

**[7]** In addition to his error in not recognizing that violence is targeted against homosexuals, the IJ erred in failing to consider all of the evidence contained in the Country Report. In particular, the IJ did not so much as mention the Jamaican law criminalizing homosexual conduct. This law, known as the Offenses Against the Person Act, prohibits " 'acts of gross indecency' (generally interpreted as any kind of physical intimacy) between men, in public or in private." The Country Report makes clear that this is not a statute that remains on the books but is not enforced. In fact, according to the Country Report, then-Prime Minister P.J. Patterson responded to criticism from the international community by stating that Jamaica would not be pressured into changing its anti-homosexual laws.

**[8]** The Offenses Against the Person Act is relevant because prosecution under the statute is a form of persecution. Although legitimate criminal prosecution generally does not constitute persecution, prosecution motivated by a protected ground does. *See Bandari v. INS*, 227 F.3d 1160, 1168 (9th Cir. 2000) (holding that petitioner was attacked by police not because he violated a neutral law against public displays of affection but because he was in an interfaith relationship); *see*

*also Karouni*, 399 F.3d at 1172-73 (holding that evidence that homosexual acts were criminalized and actively punished in the proposed country of removal compelled the conclusion that petitioner had a well-founded fear of future persecution). In this case, there is no doubt that prosecution of homosexuals under the statute is motivated by a protected ground—the prosecution is because of a protected ground. There is nothing neutral about the government's use of a statute to prohibit homosexual conduct but not any other sexual activity. Because the prohibition is directly related to a protected ground—membership in the particular social group of homosexual men—prosecution under the law will always constitute persecution.[5] This is true even though the statute criminalizes conduct, not sexual orientation *per se*. *Karouni*, 399 F.3d at 1173 ("[W]e see no appreciable difference between an individual . . . being persecuted for being a homosexual and being persecuted for engaging in homosexual acts. [Either way t]he persecution . . . qualifies as persecution on account of . . . membership in the particular social group of homosexuals." (citing 8 U.S.C. § 1101(a)(42)(A))).

[9] Our review of the Country Report compels the conclusion that there exists in Jamaica a pattern or practice of persecution of gay men. It follows that if Bromfield had not been convicted of an aggravated felony, he would have been eligi-

---

[5]In oral argument the government relied heavily on *Fisher v. INS*, 79 F.3d 955 (9th Cir. 1996) (en banc), in support of its position that prosecution under the Offenses Against the Person Act would not constitute persecution. The government's reliance is misplaced. In *Fisher*, a majority of the en banc panel concluded that the petitioner had failed to establish that if she were prosecuted for not following Iran's strict laws governing women's dress and conduct, the prosecution would be on account of her religious or political beliefs. *Id.* at 961-62. In contrast, there is no question that if Bromfield were prosecuted under the Jamaican law it would be on account of his sexual orientation. Whereas any woman who violated the dress and conduct laws could be prosecuted regardless of her religious or political beliefs, only men perceived as gay can be prosecuted under the Offenses Against the Person Act. Thus *Fisher* is inapposite.

ble for asylum. *See Mgoian v. INS*, 184 F.3d 1029, 1035 (9th Cir. 1999) ("[I]f [an applicant] is able to show a 'pattern or practice' of persecution against a group of which she is a member, then she will be eligible for asylum."). But in order to be entitled to withholding of removal, Bromfield must establish that he will more likely than not be persecuted, not merely that he has a well-founded fear of persecution. Because we conclude that the IJ erred, we remand Bromfield's case to the BIA so that it can determine in the first instance whether he has met his burden for withholding of removal in light of the record evidence that there exists a pattern or practice of persecution of gay men in Jamaica. *See, e.g.*, *Knezevic v. Ashcroft*, 367 F.3d 1206, 1213, 1214-15 (9th Cir. 2004) (holding that record compelled finding of pattern or practice of persecution and remanding for BIA to reconsider application for withholding).

**[10]** Although the IJ's misinterpretation of the Country Report is a sufficient basis for remanding the case, it is not the only error that must be corrected on remand. The IJ also erred by relying on the fact that Bromfield's father had not disowned him and that Bromfield voluntarily visited Jamaica twice before coming out at the age of nineteen. To the extent that the IJ's reliance on these facts is based on his conjecture about how a Jamaican man would treat his homosexual son and whether a teenager who had not yet identified himself as gay would voluntarily travel to Jamaica to visit his family, such conjecture does not constitute substantial evidence to support the IJ's decision. *See Karouni*, 399 F.3d at 1176. These facts are entirely irrelevant to a determination of whether Bromfield will be persecuted in Jamaica today.

**[11]** Turning first to Bromfield's relationship with his father, it is completely irrelevant that Bromfield's father—who has lived in the United States for over a decade—has not cut off all communication with Bromfield. Whether his comparatively-tolerant attitude results from the fact that he has not lived in Jamaica for many years or from his love for

his son, a father's refusal to disown his son is not evidence that the son will not be persecuted in the proposed country of removal. Moreover, the record is clear that Bromfield's father does not approve of his son's sexual orientation. In fact, he refused to speak to Bromfield for two years after he found out that Bromfield was gay. His attitude thus supports Bromfield's position that Jamaican society is not accepting of homosexuality, and in no way undermines Bromfield's claim that he would be persecuted if removed to Jamaica.

[12] Similarly, the fact that Bromfield made two short trips to visit his family in Jamaica before he came out does not undermine his claim. Importantly, Bromfield has not been to Jamaica since he came out as a gay man. He has therefore never been in a position to be persecuted on account of his sexual orientation. Moreover, the short duration and purpose of the trips—to visit family—further reduced the likelihood that he would be persecuted. Thus the fact that he was not persecuted as a teenager has no bearing on the likelihood that he would be persecuted in Jamaica today.

[13] Finally, we note that while Bromfield's lack of political activism could be relevant in determining the likelihood that he would be persecuted, it is by no means dispositive. The Country Report gives some indication that high-profile gay-rights activists are at a heightened risk of persecution. But the risk is not limited to those individuals. In light of the statute criminalizing homosexual conduct and the widespread, targeted violence against homosexuals, all gay men are at risk.

We therefore grant Bromfield's petition for review and remand his case to the BIA to determine whether he has established a clear probability of persecution in light of the fact that there exists a pattern or practice of persecution of gay men in Jamaica. This will require the IJ to consider the Jamaican law criminalizing homosexual conduct and the frequency with which that law is enforced, and to determine whether

that frequency, combined with evidence of widespread violence targeted at homosexuals, makes it more likely than not that Bromfield will be persecuted on account of his sexual orientation if removed to Jamaica.

## V.   Convention Against Torture

**[14]** Bromfield is entitled to relief under CAT if he establishes that he would more likely than not be tortured in Jamaica. 8 C.F.R. § 1208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him . . . for an act he . . . has committed . . . or for any reason based on discrimination of any kind . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Acts constituting torture are varied, and include beatings and killings. *See Comollari v. Ashcroft*, 378 F.3d 694, 697 (7th Cir. 2004) (citing 28 U.S.C. § 1350 (note)) (killings); *Al-Saher v. INS*, 268 F.3d 1143, 1147 (9th Cir. 2001) (beatings).

**[15]** The IJ rejected Bromfield's CAT claim because he had not demonstrated that he was at risk of harm from the Jamaican government. This conclusion is based on an error of law. Bromfield was not required to show that the government would torture him; he could satisfy his burden by showing that the government acquiesces in torture of gay men. 8 C.F.R. § 1208.18(a)(1). "Acquiescence" requires only that public officials were aware of the torture but "remained willfully blind to it, or simply stood by because of their inability or unwillingness to oppose it." *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1060 (9th Cir. 2006). The record here compels the conclusion that the Jamaican government not only acquiesces in the torture of gay men, but is directly involved in such torture. The government criminalizes homosexual conduct, making it punishable by up to ten years in prison. This

is an indicator of the government's position toward gay men, as is the fact that the police generally do not investigate complaints of human rights abuses suffered by gay men. Moreover, the Country Report further indicates that police officers and prison wardens are directly responsible for a portion of these abuses. Therefore, Bromfield has established sufficient involvement by the Jamaican government in the torture of gay men to bring it within the regulatory definition.

**[16]** We remand Bromfield's case to the BIA to determine whether, in light of the Jamaican government's acquiescence and involvement in the torture of homosexual men, it is more likely than not that Bromfield will be tortured if removed to Jamaica. In evaluating Bromfield's claim, the agency must consider "all evidence relevant to the possibility of future torture," including the Country Report, which establishes that gay men are victims of beatings, killings, and other forms of torture. *See* 8 C.F.R § 1208.16(c)(3).

## VI.    Conclusion

The IJ erred in failing to find that the Country Report established that there exists a pattern or practice of persecution of homosexual men in Jamaica. We therefore remand Bromfield's withholding of removal claim so that the agency can determine in the first instance whether Bromfield has established that he will more likely than not be persecuted in light of this pattern or practice. Evidence of Bromfield's relationship with his father or his two prior visits to Jamaica are irrelevant to that determination. Additionally, we remand Bromfield's CAT claim so that the agency can apply the correct legal standard and determine whether Bromfield is entitled to relief under CAT. On remand, the agency should permit both parties to submit new evidence relevant to these claims.

**PETITION GRANTED; REMANDED.**