**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2860
_____

GARY LEAFORD CODNER,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A095-130-504)
Immigration Judge: Walter Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2013

Before:  AMBRO, SHWARTZ and SCIRICA,  Circuit Judges

(Opinion filed: January 10, 2014)
_____

OPINION
_____


PER CURIAM

Petitioner Gary Codner petitions for review of the Board of Immigration Appeals'

final order of removal.  For the reasons that follow, we will grant the petition for review

and remand the matter for further proceedings.

Codner, a native and citizen of Jamaica, came to the United States in 1997 and overstayed his visa. In 2002, he was placed in removal proceedings, which then were administratively closed as it appeared that he would be able to adjust his status on the basis of a bona fide marriage. His case remained administratively closed until Codner was charged with, and convicted of, possession with intent to deliver in violation of 35 Pa. Cons. Stat. Ann. § 780-113(a)(30), and simple possession in violation of 35 Pa. Cons. Stat. Ann. § 780-113(a)(16), and sentenced to a term of imprisonment of 3-5 years.

Removal proceedings were reopened and Codner was found removable under 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."). Codner applied for asylum, withholding of removal, and protection under the Convention Against Torture, contending that he is gay, and that Jamaica is a virulently homophobic country where the Kingston police either turn a blind eye toward anti-gay violence or actively participate in it.

Codner, now 47 years-old, testified in support of his application at a merits hearing on December 6, 2012. He testified that he is gay and that he left Jamaica in 1997 to escape the homophobia. Codner recounted that he was once a victim of serious anti-gay violence and offered to show the gunshot scars on his leg and foot from a 1994 assault. He testified that his 18-year old nephew was murdered in 2008 when the nephew

2

spoke up in his defense. Codner was then cross-examined about why he did not previously disclose his homosexuality. He was also cross-examined about his relationships with men in the United States, and whether he had sexual relations with his wives. Codner explained that he is only open about his sexual orientation with other gay men. He remains fearful, even in the United States, explaining that: "I grew up in an environment where … all faggots is supposed to – all batty boys, as they say it in Jamaica, supposed to [be] dead because God make Adam and Eve, not Adam and Steve." A.R. 382-83. He explained that no one asked him directly, in connection with any of his immigration proceedings, if he feared returning to Jamaica until recently, see id. at 386-87, and that, with an approved visa petition, he saw no need to make the disclosure earlier, see id. at 399-400. With respect to his experiences in Jamaica, he testified that he did not have a girlfriend and was a hairdresser, which caused others to question his sexual orientation. See id. at 408.

In support of his application, Codner submitted letters from: (1) Pastor Dalton Scott, attesting to the death of Codner's nephew, Alrick Bennett, because he had defended his uncle; (2) Kingston Inspector of Police E. Byfield, attesting to his knowledge of the family and Codner's reputation for being gay; (3) Justice of the Peace Willward Wellington, stating that Codner is homosexual but is otherwise a wonderful human and a caring person; (4) his mother, Eulalee Gayle, stating that Codner is gay and was beaten in Jamaica and that a close family member was killed defending his honor; (5) his sister, Rose Codner-Bennett, stating that her son, Codner's nephew, was shot to death for defending his uncle's honor and that Codner is well-known in the community

3

for being gay; (6) her son, Alake Bennett, stating that his brother, Alrick Bennett, was shot and killed on March 12, 2008 because he chose to challenge the taunts about Codner's homosexuality, and that the family has been stigmatized by neighbors and subjected to abuse and threats because of Codner's homosexuality; (7) Legent Lennon, a friend, stating that Codner was badly beaten in 1993 for being gay and that his nephew was shot to death trying to defend his honor; (8) Imogene Simpson, a friend, stating that Codner "may be Gay but I know him to be a nice person" and "Jamaica is not forward thinking when it comes on to being homo"; (9) Errol Powell, who has known Codner since he was a boy who displayed "effeminate behavior," stating that Codner's nephew was shot dead because Codner is gay, and discussing rampant homophobia in Jamaica; (10) Sheeren Adams, stating that Codner is gay, that he was harassed and beaten in 1993, and that "the monsters" heard that he might return to Jamaica in 2008 and so they stalked his family, eventually shooting to death his nephew in March 2008; and (11) Lorna White, who had known Codner since he was a child, stating that Codner might be killed in Jamaica if someone "knows of [his] past." A.R. 476-87.

Codner also submitted his nephew's death certificate, showing the cause of his death on March 12, 2008 to be a gunshot wound to the chest, and articles showing the existence of homophobia in Jamaica. He also submitted the State Department's 2009 Human Rights Report on Jamaica, which notes that homosexual acts are punishable by up to 10 years in prison and which details numerous acts of anti-gay violence in Kingston and Montego Bay.

4

In its closing argument, the Department of Homeland Security argued that Codner's testimony that he is gay was not believable because he only disclosed the truth about his sexual orientation when he ran out of other options to remain in the United States, and because he has fathered children by having sexual relations with women. Moreover, he provided no letters from persons in the United States attesting to his homosexuality, and thus failed to corroborate his claim.

In a decision issued from the bench, the Immigration Judge found that Codner was ineligible for asylum, statutory withholding of removal, and withholding of removal under the CAT because his marijuana conviction, for which he received a sentence of 3-5 years, constituted a "particularly serious crime." The IJ then denied Codner's CAT application for deferral of removal, see generally 8 C.F.R. § 1208.17, on the basis that he did not testify truthfully about his sexual orientation. The IJ observed that Codner had traveled to the United States twice after being shot in the foot in Jamaica in 1994 and prior to settling here permanently in 1997, and that, if he really feared for his life, he would not have returned each time to Jamaica. The IJ expressed his disbelief that Codner's nephew was killed defending his honor because the nephew would have been a baby in 1997 and thus never personally knew Codner. The IJ also noted that Codner had been married twice, that both of his wives had filed visa petitions on his behalf, and that he had never disclosed to either of his wives that he is gay. The IJ noted that Codner had fathered two children, and had testified to having sexual relations with six different women, whereas he testified that he had only one serious relationship with a man from 2008 until 2010, and sexual encounters with two other men of a more casual nature. The

5

IJ agreed with DHS that the timing of Codner's disclosure of his sexual orientation was highly suspicious, and the IJ agreed that Codner should have corroborated his claim with letters from someone in the United States. The IJ called the letters from Codner's family and friends "suspect," stating that they were submitted on the day of the hearing, A.R. 333.

Codner appealed to the Board of Immigration Appeals. On April 5, 2013, the Board denied the appeal. The Board noted that Codner did not challenge on appeal that he was removable for having been convicted of a violation relating to a controlled substance, and the Board agreed with the IJ that deferral of removal under the CAT was the only form of relief available to Codner because of his state drug conviction.[1] The Board then reviewed the adverse credibility determination for clear error, 8 C.F.R. § 1003.1(d)(3)(i). The Board affirmed the IJ's denial of CAT relief for the reasons stated in the IJ's decision. The Board reasoned that Codner did not present sufficient credible evidence both that he is gay and that it is more likely that not that he will be tortured if returned to Jamaica. The Board noted in the margin that Codner had submitted several news articles on appeal, but those articles did not "rehabilitate his non-credible claim of being a homosexual." A.R. 172.

---

[1] An alien must exhaust all administrative remedies as a prerequisite to raising a claim before this Court. See 8 U.S.C. § 1252(d)(1); Alleyne v. Immigration & Naturalization Serv., 879 F.2d 1177, 1182 (3d Cir.1989). Codner's failure to challenge these issues before the Board constitutes a failure to exhaust administrative remedies and deprives us of jurisdiction over the issue of whether deferral of removal under the CAT was the only form of relief available to Codner, see Lin v. Att'y Gen. of U.S., 543 F.3d 114, 119–20 (3d Cir. 2008).

Codner did not petition for review of this decision. Instead, on April 29, 2013, and thus within 30 days of Board's prior decision, Codner filed an item pro se with the Board, which he called a motion to reopen. Although Codner stated that he had new evidence that was not previously available, he also took issue with the IJ's determination that he did not testify credibly about the murder of his nephew, Alrick Bennett, A.R. 163, and he took issue with the Board's statement that the Jamaican Government would protect him, citing Bromfield v. Mukasey, 543 F.3d 1071, 1079 (9th Cir. 2008) ("The record here compels the conclusion that the Jamaican government not only acquiesces in the torture of gay men, but is directly involved in such torture."). The Department of Homeland Security submitted a response in opposition to the motion. In reply to this response, Codner once again submitted his news articles, and his letters from his mother, Pastor Scott, Inspector Byfield, Justice of the Peace Wellington, Rose Codner-Bennett, A. Bennett, Legent Lennon, Imogene Simpson, Errol Powell, and Sheeren Adams, among other items. On June 10, 2013, the Board denied the motion, concluding that Codner's arguments concerning his sexual orientation had been previously considered and rejected. The Board noted that the evidence submitted with the motion was previously considered.

Codner timely petitions for review. We previously granted him a stay of removal. In his Informal Brief, he challenges the determination that he does not qualify for deferral of removal under the CAT, and argues that the IJ's adverse credibility determination is insupportable. See Petitioner's Informal Brief, at 2. He argues specifically that his testimony about his nephew was genuine and could not reasonably have been disbelieved. See id. at 4. The Department of Homeland Security argues, in pertinent

7

part, that we lack jurisdiction to review the Board's April 5, 2013 decision because Codner did not timely appeal it, see 8 U.S.C. § 1252(b)(1) (providing for 30 days to appeal),[2] that our scope of review is thus limited here, and that, as to the Board's June 10, 2013 decision over which we do have jurisdiction, the Board acted within its discretion when it denied Codner's motion to reopen.

With respect to the question of our jurisdiction in this matter, we conclude that Codner's self-titled "motion to reopen" was, at least in part, a true motion for reconsideration. In fact, the Department of Homeland Security opposed the motion by submitting a form response, in which the following box was checked: "It is a motion to reconsider that does not specify the errors of fact or law in the prior decision or is not supported by pertinent authority. 8 C.F.R. § 1003.2(b)(1). Respondent's motion raises the same issues he raised in his appeal which the Board denied on April 5, 2013." Moreover, as a motion for reconsideration, it was timely filed because it was filed within 30 days of the Board's April 5, 2013 decision. 8 C.F.R. § 1003.2(b)(2). We note also, that, in the case of a motion for reconsideration, "[s]ome review of the merits decision is required in order to determine whether the [Board] erred in concluding, on reconsideration, that [the alien] had not shown any error of fact or law in that decision

---

[2] The Board's decision on the merits and its order denying a motion to reconsider "are two separate final orders." Castro v. Att'y Gen. of U.S., 671 F.3d 356, 364 (3d Cir. 2012) (internal quotation marks omitted) (quoting Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 405 (1995)). "Either one may be the subject of a petition for judicial review, which must be filed within thirty days of the date of the order," id. (citing 8 U.S.C. § 1252(a)(1), (b)(1)), but the filing of a timely motion for reconsideration "does not toll the thirty-day period for seeking review of the earlier merits decision," id. (citing Stone, 514 U.S. at 398–99)).

that would alter the outcome." Castro v. Att'y Gen. of U.S., 671 F.3d at 356, 354 (3d Cir. 2012).

Although we generally have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of the Board denying reconsideration, and our scope of our review includes some review of the Board's merits decision, Codner's case presents yet another jurisdictional question. A CAT applicant must show that "it is more likely than not that [he] would be tortured in the proposed country of removal." 8 C.F.R. § 1208.16(c)(3). In Kaplun v. Att'y Gen. of U.S., 602 F.3d 260 (3d Cir. 2010), we stated that whether future torture was likely turned on two questions: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" Id. at 271. The first question is factual; only the second is legal. See id. The agency denied Codner's CAT application solely on the basis that he did not credibly prove that he is gay; in other words, the agency considered only the factual question of whether Codner provided sufficient proof concerning what is likely to happen to him if removed. This is not a reviewable question. See Green v. Att'y Gen. of U.S., 694 F.3d 503, 506 (3d Cir. 2012) (addressing CAT application of Jamaican citizen for deferral of removal and holding that Court lacks "jurisdiction to review factual findings underlying a removal order against an alien who has committed a controlled substance offense").

In Codner's case, however, he does not just disagree with the IJ's weighing of the evidence. See Cospito v. Att'y Gen. of the U.S., 539 F.3d 166, 170 (3d Cir.2008) (argument that certain evidence has been discounted amounts to nothing more than quarrel over the correctness of the factual findings of the agency). Instead, his case

9

presents a legal and reviewable question concerning whether the IJ overlooked and improperly failed to consider material and probative evidence. Here, the IJ was presented with letters from friends and family that, if credible, could corroborate Codner's position but the record does not disclose why he found them to be "suspect." We held in Sukwanputra v. Gonzales, 434 F.3d 627, 636 (3d Cir. 2006), that this is a reviewable question under the jurisdictional statute, 8 U.S.C. § 1252(a)(2)(D). Because the letters, if considered, might have resulted in a favorable credibility determination, we find that a remand is appropriate so that the genuineness or authenticity of the letters may be reconsidered, and, if found genuine, Codner's credibility be reevaluated, see id., for purposes of his CAT deferral of removal claim.

Like the IJ, the BIA did not explain why it discounted letters attesting to Codner's homosexuality. The agency may not ignore evidence favorable to an alien, and must do more than "cherry-pick" a few pieces of evidence to support its conclusion. Huang v. Att'y Gen. of U.S., 620 F.3d 372, 388–89 (3d Cir. 2010). A motion for reconsideration is a "request that the Board reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." In re Ramos, 23 I. & N. Dec. 336, 338 (BIA 2002) (quoting Matter of Cerna, 20 I. & N. Dec. 299, 402 n.2 (BIA 1991). Here, the Board, in deciding the motion for reconsideration, abused its discretion by not reconsidering the underlying merits of Codner's claim, in view of its and the IJ's mistake in seemingly excluding significant, probative evidence in support of Codner's claim that he is gay. If authentic and truthful, the letters from Codner's family and friends are at least as probative, if not more so, of

10

his sexual orientation as any affidavit he might have obtained from a sexual partner in the United States.

For the foregoing reasons, we will grant the petition for review and remand the matter for further proceedings.  Codner's "Affidavit of Judicial Notice, etc.," which appears to be a request for immigration bail, is denied without prejudice to his pursuing it before the agency.