**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NATIVIDAD DE JESUS DURAN
ESCOBAR,

              Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

              Respondent.

No.    12-70930

Agency No. A075-707-335

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 8, 2016
Pasadena, California

Before: BERZON, CHRISTEN, and NGUYEN, Circuit Judges.

    Natividad De Jesus Duran Escobar (Duran), a native and citizen of El

Salvador, petitions for review of a final order of removal from the Board of

Immigration Appeals (BIA). The BIA dismissed Duran's appeal of an

Immigration Judge's (IJ's) denial of her applications for asylum, withholding of

---

    [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

removal, and protection under the United Nations Convention Against Torture (CAT). The BIA also denied Duran's request for a remand based on the intervening decision in *Perdomo v. Holder*, 611 F.3d 662 (9th Cir. 2010) (holding Guatemalan women may constitute a cognizable social group).

We have jurisdiction under 8 U.S.C. § 1252(a)(1). We deny the petition with respect to Duran's applications for asylum, withholding of removal, and CAT protection.[1] The BIA did not abuse its discretion by denying her remand request.

1. The IJ and BIA denied Duran's asylum application on the grounds, inter alia, that Duran's encounters with the guerrillas in El Salvador did not amount to persecution and she failed to establish a reasonable fear of future persecution. Duran argues on appeal that this finding is not supported by substantial evidence. We disagree.

The robberies Duran suffered at the hands of guerrillas do not rise to the level of persecution. *See Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004). The guerrillas stopped buses Duran was riding on three times and took her money, but Duran was not physically harmed during any of these incidents. Although Duran testified that she disagreed with the guerrillas' actions because it

---

[1] Duran also argues that the IJ and BIA erred by denying her application for cancellation of removal. We address this issue in an opinion filed concurrently with this disposition.

was unfair for them to take what others had worked for, she presented no evidence that the perpetrators victimized her on account of a protected ground. "An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground." *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010). Thus, substantial evidence supports the Agency's decision that Duran did not meet her burden to show past persecution.

The record also does not compel the conclusion that Duran established a well-founded fear of future persecution. Duran contends that she established a well-founded fear: (1) from gangs, due to her relationship with her son Carlos; (2) as the mother of a son with disabilities; and (3) as a returning migrant from the United States. Duran's son Carlos is a U.S. citizen. At the time of the hearing before the IJ, Carlos was seventeen years old. Although Duran testified that she intended to take Carlos with her if she returned to El Salvador, the fact that he is not legally required to leave the United States, and was almost an adult at the time of the IJ hearing, undermines the reasonableness of Duran's fears.

The only evidence Duran presented to support her contention that gangs would attempt to recruit Carlos is her testimony that she learned from the news and others that there are "a lot of gangs" in El Salvador and "they like to recruit a lot of

3

young men." She testified that none of her other five sons—who remained in El Salvador after she came to the United States—were physically harmed by gang members or criminals. She presented no evidence that gangs attempted to recruit any of them while they lived in El Salvador. Duran did not meet her burden to show that she has a well-founded fear of future persecution based on the possibility that gangs in El Salvador would attempt to recruit Carlos.

Duran also contends that she has a well-founded fear of future persecution because Carlos suffers from ADHD and depression. Duran testified that all of her son's medications are available in El Salvador. When the government asked Duran who would discriminate against Carlos on account of his disabilities, Duran replied: "Well, not discrimination but regarding the Maras, they recruit them like the army recruits young men." Thus, the Agency correctly found that Duran did not establish a reasonable possibility of experiencing harm on account of her son's disabilities.

Finally, Duran argues that she has a well-founded fear of future persecution based on her "unique characteristic" of returning from the United States to a country with less wealth. She testified that gangs in El Salvador would know she has recently returned from the United States because they investigate newcomers, and that they would target her because they "think you're bringing money." But

4

Duran's eldest son returned to El Salvador from the United States in 2009, and Duran offered no evidence that gangs have targeted or harmed him in any way. Duran's characteristic of returning to a country with less wealth would apply to almost all asylum applicants. Therefore, Duran did not satisfy her burden to show that she has a well-founded fear of future persecution as a migrant returning to El Salvador from the United States. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151–52 (9th Cir. 2010) (holding that proposed social group of Mexicans returning from the United States "is too broad to qualify as a cognizable social group").

The Agency did not err by denying Duran's asylum application. We affirm the Agency's denial of Duran's application for withholding of removal because she failed to meet the lower burden for asylum. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003).

2. Duran next argues that the Agency erred when it denied her petition for CAT protection. But the record does not compel the conclusion that Duran will more likely than not be tortured upon her return to El Salvador. *See Bromfield v. Mukasey*, 543 F.3d 1071, 1079 (9th Cir. 2008). The incidents of abuse Duran suffered at the hands of the guerrillas do not rise to the level of torture. *See* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of . . . punishment."). Duran's

5

"generalized evidence of violence and crime" in El Salvador is not particular to her and is therefore insufficient to demonstrate that she would more likely than not be tortured. *Delgado-Ortiz*, 600 F.3d at 1152.

3. Finally, Duran argues that the BIA erred by denying her request for a remand to consider *Perdomo*. Duran submitted no evidence that she was subject to violence as a woman or fears that she would be subjected to such violence if she returns to El Salvador. Duran asserts that she should be allowed to submit additional evidence "to address this new development within the law." But as *Perdomo* acknowledged, we have already recognized that "women in a particular country . . . could form a particular social group." 611 F.3d at 667 (citing *Mohammed v. Gonzales*, 400 F.3d 785, 798 (9th Cir. 2005)). Therefore, the BIA did not abuse its discretion by denying Duran's motion to remand.

Each party shall bear its own costs on appeal.

**PETITION DENIED.**

6