**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KENY YAJAIRA ALVAREZ-MOLINA, AKA Keny Alvarez-Molina, | No. 15-73134 |
| Petitioner, | Agency No. A200-881-871 |
| v. | MEMORANDUM* |
| JEFFERSON B. SESSIONS III, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 4, 2018
Seattle, Washington

Before: BYBEE and N.R. SMITH, Circuit Judges, and ANTOON,** District
Judge.

Keny Yajaira Alvarez-Molina ("Alvarez"), native and citizen of El Salvador,

petitions for review of a decision of the Board of Immigration Appeals ("BIA"),

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

which affirmed an immigration judge's ("IJ") denial of her applications for withholding of removal and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252.

1. The BIA did not abuse its discretion when it concluded that Alvarez's conviction for robbery under Indiana Code § 35-42-5-1 was a particularly serious crime barring her from relief from withholding of removal. *See Arbid v. Holder*, 700 F.3d 379, 383 (9th Cir. 2012). The BIA considered Alvarez's age when she committed the offense and her role in the crime. After reviewing the circumstances of the crime, the BIA determined that, despite her young age at the time, she was a danger to the community. Nothing in the record suggests that the BIA's decision was "illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

2. Because we are unable to determine whether the BIA properly analyzed whether the government officials in Ahuachapán, El Salvador would acquiesce in acts of torture against Alvarez, we remand to the BIA to reconsider this issue. Our problem: Alverez presented credible testimony that, on one occasion, the police arrived at the scene when MS-13 members were beating her and her cousin. Instead of intervening in the altercation, the police waited until the perpetrators had

2

gone, and then threatened Alvarez and her cousin with further harm if they did not leave.[1] Alvarez truthfully testified that the police did not respond to her and her cousin, because the police thought they were gang members. Alvarez's testimony was also supported by (a) Alvarez's expert's testimony that "[t]he police are hesitant and sometimes not at all willing to intervene in any gang related activities and they would be most hesitant and least likely to intervene to protect a gang member" and the police are "only too happy to see gang members disposed of or eliminated"; and (b) the country reports that indicated that El Salvador "struggles with police and official corruption and ties to gangs and criminal activity" and "the police will murder suspected gang members with impunity." After reviewing this evidence, the BIA merely described the actions of the police as rude and unfortunate, and concluded there was no evidence that "the police would turn a blind eye to torturous conduct." Then to buttress this conclusion, the BIA cited generally to the efforts of the Salvadoran government to combat gangs, gang violence, and corruption in the police force. The BIA never specifically addressed whether "public officials at the state and local level in [El Salvador] would acquiesce in any torture [Alvarez] is likely to suffer." *Madrigal v. Holder*, 716

---

[1] "Acts constituting torture under CAT are varied, and include beatings and killings." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011) (quotation marks omitted) (quoting *Bromfield v. Mukasey*, 543 F.3d 1071, 1079 (9th Cir. 2008)).

F.3d 499, 510 (9th Cir. 2013). Thus, the BIA's decision appears to misconstrue the facts and misapply our precedent.

Although the BIA cited to *Madrigal*, the BIA "failed to state with sufficient particularity and clarity the reasons" that local police would not acquiesce in acts of torture (in light of their failure to intervene), and "so does not provide an adequate basis for this court to conduct its review."[2]  *Id.* at 509 (quotation marks and citation omitted).  As we noted in *Madrigal*, to determine whether the local government is unwilling or unable to prevent acts of torture, the BIA must "examin[e] the efficacy of the government's efforts to stop the [gang] violence," which is "affected by the degree of corruption that exists in [El Salvador's] government." *Id.*  The BIA's decision does not explain how the Salvadoran government's efforts would affect (if at all) the local officers' actions here.

---

[2] The government argues and the BIA's opinion suggests that there was an inability to track down the perpetrators.  Therefore, there was no evidence of acquiescence. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) ("Evidence that the police were aware of a particular crime, but failed to bring the perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime.").  Although the police may have been provided insufficient evidence with regard to the first beating, the second beating was different.  Regarding the second incident, the credible evidence presented established that the police were present, failed to intervene to prevent or stop the attack, and instead threatened Alvarez and her cousin with further harm.  This behavior suggests an unwillingness to act rather than an inability.

Further, after the BIA issued its decision, we issued *Barajas-Romero v. Lynch*, wherein we reaffirmed *Madrigal* and further emphasized the importance of analyzing whether local government officials (including rogue officials) would acquiesce in torture, even if the national government has taken action to combat crime and corruption. 846 F.3d 351, 363-64 (9th Cir. 2017). Because the record raises an issue with regard to whether "*a public official* would so acquiesce" in Alvarez's torture, *see Madrigal*, 716 F.3d at 509 (citation and quotation marks omitted) (emphasis added), we remand to the BIA to consider, in light of *Madrigal* and *Barajas-Romero*, whether local government officials would be unwilling "to intervene to prevent the [torturous] activity" against Alvarez, *Barajas-Romero*, 846 F.3d at 363 (citation omitted).

3. The BIA did not err in concluding that the IJ did not violate Alvarez's due process rights. A review of the record shows that the IJ was asking clarifying questions and did not engage in any improper treatment of her or her witness. *Cf. Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003).

We **GRANT** the petition as to the CAT claim and otherwise **DENY** the petition for review. We **VACATE** the BIA's decision and **REMAND** to the BIA for reconsideration consistent with this disposition. The parties shall bear their own costs on appeal.

5

*Alvarez-Molina v. Sessions*, No. 15-73134

BYBEE, Circuit Judge, concurring in part and dissenting in part:

I agree that the BIA's determination that Alvarez's conviction for robbery was a particularly serious crime was not an abuse of discretion, and that the IJ did not violate Alvarez's due process rights. I therefore concur in the denial of Alvaraz's petition for review on those grounds.

But I disagree with the decision to grant the petition as to the CAT claim. Substantial evidence supports the BIA's determination that the harm Alvarez suffered at the hands of her fellow MS-13 gang members did not rise to the level of torture, and the majority does not contend otherwise. Yet it relies on the failure of the police to intervene while Alvarez was being beaten one time by gang members to find that the BIA did not sufficiently state why Alvarez failed to establish it was more likely than not she would be tortured with the acquiescence of the Salvadoran government. As the BIA explained, the failure of the police to intervene in this one incident—in which the IJ and the BIA determined Alvarez was not being tortured—"does not demonstrate that the police would turn a blind eye to *torturous* conduct." The BIA then considered Alvarez's evidence of police corruption, the evidence of government efforts to combat that corruption, and the absence of any police involvement in the harm Alvarez suffered in El Salvador. In my view, the BIA has already conducted the inquiry for which we remand, and substantial

evidence supports the denial of CAT relief.

I respectfully dissent as to the CAT claim.