NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 6 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALBERTO MENDOZA-ORTEGA, | No.   17-71566 |
| Petitioner, | Agency No. A076-730-670 |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General, | MEMORANDUM [*] |
| Respondent. | |

On Petition for Review of an
Immigration Judge's Decision

Argued and Submitted January 17, 2019
San Francisco, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and ADELMAN, District
Judge. [**]

Petitioner, Alberto Mendoza-Ortega, has been ordered removed to Mexico.

He petitioned for a deferral of removal under the Convention Against Torture

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

("CAT"). To obtain such a deferral, he ultimately would have needed to show that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture is defined as "pain or suffering . . . inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 208.18(a)(1). A beating or killing satisfies the definition of "torture." *Bromfield v. Mukasey*, 543 F.3d 1071, 1079 (9th Cir. 2008). Petitioner would not have needed to show that the government would torture him, but rather that the "government acquiesces in torture" of individuals in a similar situation. *Id.* "Acquiescence by government officials 'requires only that [they] were aware of the torture but remained willfully blind to it, or simply stood by because of their inability or unwillingness to oppose it.'" *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011) (alteration in original; internal quotation marks omitted) (quoting *Bromfield*, 543 F.3d at 1079).

Because Petitioner was convicted of an aggravated felony, he was subject to an expedited removal process. Thus, a first step in Petitioner's CAT application was the "reasonable fear determination." 8 C.F.R. § 208.31(b). This is a streamlined process beginning with an interview in which an asylum officer determines whether the petitioner reasonably fears torture if removed. The asylum officer must find that the petitioner has a reasonable fear if the petitioner

2

establishes "a reasonable possibility" that he would be tortured in the country of removal. *Id.* § 208.31(c). The parties agree that the standard governing this determination is the same as the standard for establishing a "well-founded fear" of persecution in the asylum context. *See Bartolome v. Sessions*, 904 F.3d 803, 809 n.4 (9th Cir. 2018). To meet this standard, the petitioner's fear must be "both subjectively genuine and objectively reasonable." *Ahmed v. Keisler*, 504 F.3d 1183, 1191 (9th Cir. 2007) (quoting *Sael v. Ashcroft*, 386 F.3d 922, 924 (9th Cir. 2004)). The subjective component is satisfied by credible testimony that the applicant genuinely fears torture. *See Bartolome*, 904 F.3d at 809. As is relevant to this case, the objective prong may be satisfied by pointing to credible, direct, and specific evidence in the record of facts that would support a well-founded fear of torture. *See id.* To establish a well-founded fear, the petitioner does not have to prove that torture is more likely than not. *See Al-Harbi v. I.N.S.*, 242 F.3d 882, 888 (9th Cir. 2001). Even a ten percent chance may establish a well-founded fear. *Bartolome*, 904 F.3d at 809.

In the present case, the asylum officer determined that Petitioner was credible but had not shown a reasonable fear of torture in Mexico. Petitioner then sought review of that determination before an immigration judge, who reviewed the asylum officer's determination *de novo*. The immigration judge agreed with the asylum officer. We have jurisdiction to review the immigration judge's

determination under 8 U.S.C. § 1252. We review the determination for substantial evidence. *Bartolome*, 904 F.3d at 811. Under this standard, we may reverse only if the evidence in the record compels a reasonable factfinder to conclude that the decision is incorrect. *Nguyen v. Holder*, 763 F.3d 1022, 1029 (9th Cir. 2014).

Petitioner's claim that he reasonably fears being tortured in Mexico arises out of his involvement with the Knights Templar drug cartel. According to his statements to the asylum officer and the immigration judge, in 2010, he started selling drugs with his cousin, Juan Hidalgo, in Tacoma, Washington. Hidalgo had connections to the Knights Templar cartel. Petitioner hired someone named "Willy" to participate in the operation. Petitioner later fired Willy. In November 2012, Willy and some of his associates came to a duplex where Hidalgo, a person named Diaz, and drugs and money were located. These men apparently intended to rob Petitioner and Hidalgo. The men who came to the apartment killed Diaz. Hidalgo escaped. Later that day, the police arrested Hidalgo. Petitioner was arrested a few days later. At the time of his arrest, Petitioner was responsible for $300,000 to $400,000 in drugs and money. Petitioner states that the drugs and money were "lost," meaning that they were seized by the police.

Petitioner was eventually convicted of conspiracy to sell methamphetamine and sentenced to nine years in prison. While he was serving his sentence, Washington police officers approached him and informed him that they had

captured seven men who were involved in the murder of Diaz. The police told Petitioner that these men had intended to kill him, too. The police asked Petitioner to testify against Willy and the others, and he agreed to testify against those he could identify. Petitioner did not testify in exchange for a reduced sentence; instead, he testified because he wanted to see the men who murdered his friend Diaz punished. However, apparently in recognition of his cooperation, a court later reduced his sentence by four years.

In 2016, Petitioner testified at three trials involving the men who killed Diaz. These men were not members of the Knights Templar cartel. However, Petitioner states that, as part of his testimony, he identified Hidalgo—who was affiliated with the cartel—as the person who owned the drugs. He also states that he mentioned the names of people in Mexico.

Petitioner told the asylum officer and the immigration judge that he fears that, when he returns to Mexico, the cartel will torture him because he cooperated with the police and will be deemed a "snitch." He also fears that the cartel will hold him responsible for the $400,000 in lost drugs and money. He further contends that the cartel controls the local police and that if he went to the police for help, they would simply turn him over to the cartel.

The immigration judge determined that Petitioner's fear of torture was speculative, and we conclude that the record does not compel a contrary

conclusion. Petitioner claims, primarily, that his fear of torture is reasonable because the cartel will deem him a "snitch." We are willing to assume that the cartel tortures, with government acquiescence, at least one out of every ten persons it deems a snitch. However, Petitioner's fear that the cartel would deem him a snitch is based on speculation, and "[s]peculation on what could occur is not enough to establish a reasonable fear." *Bartolome*, 904 F.3d at 814. Petitioner did not do anything that is likely to be characterized as "snitching" against the cartel. He did not assist law enforcement in thwarting the cartel's activities or supply evidence that was used to arrest or convict cartel members. Instead, he testified against individuals who murdered his friend during an attempt to steal drugs and money that belonged to the cartel. In his testimony, Petitioner identified Hidalgo as the owner of the drugs and mentioned names of people in Mexico. But, in so testifying, Petitioner was simply trying to secure the convictions of the murderers; he was not helping law enforcement catch or convict cartel members. Of course, because cartels are ruthless and sometimes unpredictable, no one knows for certain whether the cartel would consider Petitioner's testimony to be "snitching." But we cannot say that the record compelled the immigration judge to conclude that Petitioner has at least a one-in-ten chance of being deemed a snitch and tortured with government assistance.

Petitioner also told the asylum officer that he fears that the cartel will hold

6

him "responsible" for at least part of the approximately $400,000 in drugs and money that were lost in the aftermath of the murder. He believes that the cartel will want him to repay this money, and that he will be unable to do so. Although Petitioner did not say this explicitly, we will assume that he fears the cartel will torture him if he is unable to reimburse it for the lost drugs and money. However, as far as the record reveals, Petitioner did not help the police locate the drugs or the money. Nor does the record contain evidence suggesting that the cartel is prone to torturing those who happened to be "responsible" for drugs and money at the time when they are seized by the police even if they did not help the police find the drugs and the money. So again, Petitioner relies on speculation, which cannot provide objective support for his fear of torture. *See Bartolome*, 904 F.3d at 814.

**PETITION FOR REVIEW DENIED.**